WILLIAM TETMEIR, Plaintiff-Appellant, *v.* BOARD OF EDUCATION OF SCHOOL DISTRICT No. 149, COOK COUNTY, ILLINOIS, Defendant-Appellee.

(No. 56009; 

First District—May 10, 1972.

Wexler, Kane & Rosenzweig, of Chicago, for appellant.

Dale, Haffner, Grow & Overgaard, of Chicago, (Mitchell Overgaard, of counsel,) for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This appeal is from a judgment of the Circuit Court of Cook County affirming the administrative decision of the Board of Education of School District 149 suspending and dismissing the plaintiff as a teacher.

The issues on appeal are whether a school board has the authority to order a teacher to undergo a psychiatric examination by an unbiased doctor of its choice; whether the Board's action was arbitrary and unreasonable; and whether the Board is the proper party to conduct a hearing regarding his dismissal.

The plaintiff, William Tetmeir, was a physical education teacher in School District 149. As a result of his making physical threats of violence against members of the staff beginning in February of 1970, James Albert,

the superintendent of the district, met with the plaintiff, the school principal, and the Board president on May 15, 1970. During this discussion it was suggested Tetmeir should have an examination by a doctor. On May 21, 1970, a letter was given to the plaintiff advising him a tentative appointment for June 4, 1970, had been arranged with Dr. Blackman. There was no indication in the letter this was to be a psychiatric examination. Upon calling the doctor's office and discovering the nature of Dr. Blackman's practice, Tetmeir went to see Dr. Karabin, who had originally examined him when he first became a teacher in the district. Tetmeir requested the name of a good psychiatrist in the community, and Dr. Karabin recommended Dr. McLaughlin. Tetmeir then talked to Dr. Bellinger, a doctor in the community, who also recommended Dr. McLaughlin.

At an executive session of the Board on May 27, 1970, Tetmeir objected to Albert choosing the doctor he was to see, because he and the superintendent were at odds, and Dr. Blackman had worked with Albert once before. He was afraid Dr. Blackman would be biased in favor of the superintendent's viewpoint. At the conclusion of the meeting the Board passed a resolution warning the plaintiff that his failure to report to the examination by Dr. Blackman might be cause for his dismissal. Nevertheless, the Board instructed the superintendent to choose a different psychiatrist in place of Dr. Blackman. Albert and the Board president contacted the Chicago Medical Society Referral Service and were given the names of three psychiatrists. The first doctor on the list was unavailable, but the second, Dr. Kahn, said he would do the examination if an appointment could be arranged. Dr. McLaughlin's name was not on the list given Superintendent Albert.

Superintendent Albert called Tetmeir on June 11 and told him about the selection of Dr. Kahn. When Tetmeir called Dr. Kahn, he discovered he could not get an appointment with him before August 31, because of scheduling difficulties. He then called the Chicago Medical Society Referral Service, asked for a psychiatrist in the south suburban area, and was given the names of four doctors, one of which was Dr. McLaughlin. He called Dr. McLaughlin's office and made an appointment for August 24, 1970.

On June 17, 1970, the Board adopted a resolution directing the superintendent to notify Tetmeir it was the opinion of the Board that his refusal to appear for an examination by Dr. Blackman constituted grounds for his dismissal, but that the best interests of the district would be served by giving him another opportunity to submit for an examination rather than commence dismissal proceedings at once. On July 8, 1970,

Superintendent Albert sent a copy of the resolution to Tetmeir by registered mail along with a letter directing him to present himself before Dr. Kahn no later than September 8, 1970.

The plaintiff was examined by Dr. McLaughlin and a psychologist, and on August 28 Tetmeir informed Superintendent Albert of the examination, who in turn informed the Board. The plaintiff did not submit a report from Dr. McLaughlin to the Board, neither was he called to testify for the plaintiff at the Board hearing.

On September 9, after determining the plaintiff had not seen Dr. Kahn, the Board passed a resolution dismissing and suspending Tetmeir from District 149.

Section 24—5 of the School Code, Ill. Rev. Stat. 1969, ch. 122, par. 24—5, provides in part:

"Physical fitness and professional growth.) School boards shall require of new employees evidence of physical fitness to perform duties assigned and freedom from communicable disease. Such evidence shall consist of a physical examination made by a physician licensed in Illinois or any other state to practice medicine and surgery in all its branches not more than 90 days preceding time of presentation to the board and cost of such examination shall rest with the employee. The board may from time to time require an examination of any employee by a physician licensed in Illinois to practice medicine and surgery in all its branches and shall pay the expenses thereof from school funds."

■■ The plaintiff contends the absence of a reference to a psychiatric examination in the statute precludes the Board from exercising any authority in this area. He cites other statutes in which the legislature has used the phrase "physical or mental examination" or one similar to differentiate between physical and psychiatric medical situations.

The absence of a specific reference to a psychiatric examination in Section 24—5 is not determinative of the issue. The wording of the section is clear and its definition of the examining physician is very general. The section initially provides that all new employees must have a physical examination and then states: "The board may from time to time require an examination of any employee by a physician licensed in Illinois to practice medicine and surgery in all its branches * * *." The second section is not limited to physical examinations as is the first part, and psychiatrists fall within the stated definition of a licensed physician. In the school setting the mental well-being of teachers can be even more important than physical good health. We do not believe the legislature failed to perceive this when the statute was enacted. Any other construction would leave a school board with no recourse against a

teacher who displayed tendencies toward mental instability, and there is no reason to wait until behavior becomes so aberrational as to be itself grounds for dismissal before any action is taken.

■■ Secondly, the plaintiff contends the Board's action was arbitrary and unreasonable. It is argued that because the plaintiff acted reasonably in the manner in which he selected a psychiatrist, the Board should have accepted his choice. This assertion misses the point. As long as the selection of a competent psychiatrist by the Board is done in an unbiased way, the teacher has an obligation to submit to an examination.

■■ The Board acted responsibly in responding to plaintiff's objection regarding the selection of Dr. Blackman by Superintendent Albert and also gave the plaintiff ample time to make an appointment with Dr. Kahn so that his summer plans were not interfered with.

It should be noted the plaintiff was advised early in the proceedings, both orally and in writing, that his continued employment depended upon his full cooperation.

■■ Finally, the plaintiff contends the Board is not the proper party to conduct a hearing regarding his dismissal, because the Board had originally passed the resolution relieving him of his duties. This contention ignores the fact that a school board is charged with the responsibility of dismissing a teacher "whenever, in its opinion, the interests of the schools require it," (Section 10—22.4 of the School Code, Ill. Rev. Stat., Ch. 122), and the school board has been held to be the trier of facts under Section 24—12 of the School Code. (*Yuen v. Board of Education of School District No. 46* (1966), 77 Ill.App.2d 353.) Section 24—12 provides in part:

> "Notwithstanding the entry upon contractual continued service, any teacher may be removed or dismissed for the reasons or causes provided in Section 10—22.4 in the manner hereinafter provided * * *. If the dismissal or removal is for any other reason or cause [other than a decision of the board to decrease the number of teachers] it does not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher within 10 days after the service of notice as herein provided."

The section also provides for public proceedings at which the teacher has the privilege of being present with counsel, cross-examining witnesses, offering evidence and witnesses, and presenting defense to the charges.

A reading of the record shows the hearing was conducted in a fair manner and the Board complied with Section 24—12 of the School Code in all particulars.

For these reasons the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN and ADESKO, JJ., concur.