LOUISE PITTEL, Plaintiff-Appellee and Cross-Appellant, *v.* BOARD OF EDUCATION OF SCHOOL DISTRICT 111, Cook County, Defendant-Appellant and Cross-Appellee.

(No. 59779;

First District (4th Division)—June 26, 1974.

Scariano and Gubbins, of Chicago Heights (Bruce C. Mackey, of counsel), for appellants.

Gilbert Feldman, of Kleiman, Cornfield and Feldman, of Chicago, for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

This action was brought to seek administrative review of the school district's decision to dismiss the plaintiff, a tenured teacher. The trial court ruled that the Board's decision was not against the manifest weight of the evidence, but it nevertheless reversed on the ground that the cause for dismissal was remediable. The court further found that the Board did not violate plaintiff's right to freedom of association and that the Board did not fail to accord plaintiff due process of law.

On appeal, the following issues are presented for review:

    1. Was the Board's decision contrary to the manifest weight of the evidence?

    2. Was the cause for discharge remediable?

    3. Did the Board violate plaintiff's right to freedom of association?

    4. Did the Board fail to accord plaintiff due process of law?

At the time of her termination, plaintiff was employed by the defendant School Board as a teacher with tenured status. During her 13 years of teaching in the district, she received no disciplinary sanctions of any kind from the Board or the administration. It is undisputed that her professional evaluations as a teacher were very good.

The Illinois Federation of Teachers, Local 943, is the collective bargaining unit which represents the teachers in School District 111. Plaintiff, an active member, held various offices in the local chapter and served as chairman of the union negotiating committee. In this capacity, she negotiated all four of the collective bargaining contracts between the union and the Board.

The collective bargaining agreement provides for sabbatical leaves. It establishes a sabbatical leave committee which consists of the superintendent, an elementary school principal, and three teachers. The committee makes recommendations to the Board regarding sabbaticals. The agreement provides, "A sabbatical leave may be granted for formal study or research work or for travel, either foreign or domestic, in accordance with the applicable provisions of the School Code." It further states that a teacher on sabbatical leave shall receive her salary. The School Code [1] provides that a sabbatical "* * * leave shall be conditional upon a plan for resident study, research, travel or other activities proposed by the applicant and deemed by the Board to benefit the school system * * *."

Pursuant to the terms of the collective bargaining agreement and the School Code, plaintiff requested a sabbatical leave for the 1971-72 academic year. On December 18, 1970, she requested a sabbatical leave "for the purpose of travel on the North American Continent and Europe." The superintendent advised the sabbatical leave committee that the Board probably would not approve applications requesting sabbatical leaves for purposes of travel but would only consider applications for purposes of study. Therefore, plaintiff was advised to resubmit her application stating the name of the school she would be attending and her "plan of study leading to a degree."

Plaintiff complied with the committee's instructions, although prior to that time no specificity apparently had been required regarding how teachers on sabbatical leaves would spend their time. On February 10, 1971, she submitted another written application for sabbatical leave along with a "Program of Studies for Advanced Degree" from Chicago State College. In her application plaintiff advised the superintendent, "It is my intention to take courses leading to a Master's Degree in Education at Chicago State College."

Subsequently, plaintiff attended a meeting with the sabbatical leave committee at which her program of advanced studies was discussed. She advised the committee that the courses needed for her degree were listed in the plan submitted to the committee. Her plan listed ten courses totaling 30 semester hours, to be completed "* * * at Chicago State

---

[1] Ill. Rev. Stat. 1971, ch. 122, § 24—1 *et seq.*

College, 6800 S. Stewart Avenue, Chicago, Illinois." She further stated, "I could not assure the committee that I would complete that program during that year, during that coming year." The School Code's provisions on sabbatical leaves were read aloud to her at that meeting.

The committee then decided to recommend to the Board that plaintiff's request for a sabbatical leave be approved, and the Board granted its approval without discussion.

While on sabbatical leave for the 1971-72 academic year, plaintiff received her full salary. However, she successfully completed only 2 of the 10 courses listed in her approved plan. She took one additional course which was not on the list submitted to the committee and which she apparently had taken previously. During the fall 16-week trimester, from September 7, 1971, to December 23, 1971, plaintiff took two courses consisting of 6 hours. During the winter 16-week trimester, from January 3, 1972, to April 31, 1972, she took another course consisting of 3 hours. She did not attend the third 8-week trimester, from May 1, 1972, to June 24, 1972. She did not qualify as a full-time student during either of the two trimesters she attended classes, because Chicago State College requires at least 9 hours a trimester for full-time students while plaintiff took only 6 hours and 3 hours respectively. Moreover, none of the three courses taken by plaintiff were completed at the main campus of Chicago State College located at 6800 S. Stewart Avenue in Chicago. Instead, plaintiff attended evening classes at an extension of Chicago State that was located within the geographic boundaries of the defendant school district.

The Board first became aware of plaintiff's academic work for the 1971-72 school year in September, 1972, when it received a copy of her transcript. On September 26, 1972, the Board adopted a dismissal resolution for cause, effective December 8, 1972. The resolution charged plaintiff as follows:

1. Failure to comply with her written and approved plan; failure to attend Chicago State full time and failure to devote the entire period of the leave to the purposes for which it was granted;

2. Failure to report to her superiors that she was not following her approved plan;

3. Incompetence;

4. Negligence;

5. Insubordination;

6. Unprofessional conduct; and

7. The best interests of the school required her dismissal.

The September 26 resolution also contained an express finding that the causes for dismissal were not remediable.

Pursuant to § 24—12 of the School Code (Ill. Rev. Stat. 1971, ch. 122, par. 24—12), plaintiff was given a notice of dismissal. She requested and was given a bill of particulars and a public hearing. An attorney was appointed by the Board to serve as the hearing officer. Plaintiff was present at the hearing and was represented by counsel.

Plaintiff's position at the hearing was that she fulfilled the requirements of her sabbatical leave because she took "some courses" leading to a Master's Degree in Education. Her testimony was that she assumed the two-16 week trimesters satisfied a year's work and that it was her understanding the third trimester was an additional period of time for students to take extra courses or "make-up" courses. Ten to 15 days of the 8-week trimester plaintiff did not attend extended beyond the district's calendar, although the district began 8 days earlier than the beginning of classes at Chicago State College in that year.

After the hearing, the Board passed a resolution which found plaintiff guilty of all the charges set forth in its September 26, 1972, resolution except incompetency and insubordination. On December 4, 1972, the Board issued its decision dismissing plaintiff from her position as a tenured teacher.

Plaintiff then filed a complaint for administrative review of the Board's decision. Her complaint alleged, *inter alia,* that the Board's decision was arbitrary in that she was fired without just cause, that the decision of the Board was contrary to the manifest weight of the evidence, and that the causes were remediable.

After considering written briefs and hearing oral arguments, the trial court found that the Board's decision was supported by the evidence. It also found:

"* * * [T]hat in accepting the facts that the [Board's] findings were correct, that the conduct of the petitioner here, the plaintiff during this period was that conduct was subject to remedial action. The court remands this to the Board to consider appropriate remedial action. I don't know if it is proper for this court to suggest—I think a tenure teacher of 13 years deserves at least the opportunity to remedy this action by perhaps returning the salary and taking make-up courses."

The court further found that the Board did not violate plaintiff's right to freedom of association and that it did not fail to accord her due process of law.

The Board appealed from the holding that the causes were remediable. Plaintiff cross-appealed from the finding that the Board's decision was not contrary to the manifest weight of the evidence, that the Board did

not violate her right to freedom of association, and that the Board did not fail to accord her due process of law.

The first question we shall discuss is whether the decision of the School Board was contrary to the manifest weight of the evidence. In essence, the Board's decision to dismiss plaintiff was based on its findings that she did not devote full time to the program that had been approved and that she failed to report the change in her plans to her superiors. Thus, the Board concluded, plaintiff failed to comply with the following provisions of the School Code regarding sabbatical leaves:

> "The [sabbatical] leave shall be conditional upon a plan for resident study, research, travel or other activities proposed by the applicant and deemed by the board to benefit the school system, which plan shall be approved by the board and not thereafter modified without the approval of the board.
>
>   &ast;  &ast;  &ast;
>
> Unless justified by illness or incapacity, failure of any person granted a leave under this Section to devote the entire period to the purposes for which the leave was granted shall constitute a cause for removal from teaching service." Ill. Rev. Stat. 1971, ch. 122, § 24—6.1.

■■ After careful consideration of the record before us, we find that the Board's decision was not contrary to the manifest weight of the evidence. The plan of study which was submitted by plaintiff and approved by the Board listed 10 courses leading to a Master's Degree in Education. Yet, plaintiff enrolled in only 2 of the 10 courses which the Board approved. Although the purpose for her sabbatical leave was resident study, the two courses that plaintiff did complete were not taken in residence. The record shows that she did not enroll in sufficient courses to satisfy the college's requirements for full-time study and that the classes met once per week at an extension school located near the district in which plaintiff had been employed as a teacher. Further, plaintiff did not advise her superiors of the change in her plans or the reduced number of courses that she was taking.

Plaintiff contends that the Board's findings were arbitrary. She argues that there was an absence of standards in the district governing sabbatical leaves prior to the year in which she applied and, further, that the Board made an ex post facto determination of what constituted the "entire period."

■■ In our opinion, this argument is without merit. We think the record clearly shows that plaintiff knew what was expected of her at the time the leave was granted. She testified that the statutory provision

regarding sabbatical leaves was read aloud to her at the meeting she attended with the sabbatical leave committee.

We think that the statute, which was read aloud to plaintiff, clearly sets forth the conditions and terms under which she was granted a sabbatical leave. It advised plaintiff that she could not modify the plan approved by the Board without obtaining Board approval of the modification, yet it is undisputed that plaintiff did not discuss the change in her program of study with her superiors. The statute further advised plaintiff that failure to devote the entire period of the leave to the purpose for which it was granted constituted a cause for removal.

Plaintiff does not allege that she failed to enroll in the courses listed in her plan because of illness, incapacity, or any other reason. Instead, she asserts that she had no notice of what constituted the "entire period" of the leave prior to her dismissal and that she felt she had satisfied the requirements of her leave by taking "some courses." It is inconceivable to us that plaintiff could have thought three courses taken during the evening would constitute full-time resident study, and we do not feel that the Board or the trial court were required to accept her explanation. Moreover, since plaintiff received her full salary during the entire period of the leave, we feel it was incumbent upon her to inquire of the Board whether or not "some courses" constituted the entire period.

In view of the foregoing, we affirm the ruling of the trial court that the Board's decision was not contrary to the manifest weight of the evidence.

The trial court reversed the Board's finding that the causes for dismissal were irremediable, and the Board appeals.

A finding of irremediability by a school board is subject to judicial review. However, this finding involves an exercise of judgment and is not to be reversed by the courts unless the finding is manifestly against the weight of the evidence. *Yuen v. Board of Education* (1966), 77 Ill.App.2d 353, 358, 222 N.E.2d 570, 572; *Last v. Board of Education* (1962), 37 Ill.App.2d 159, 164, 185 N.E.2d 282, 284-85; *Keyes v. Board of Education* (1959), 20 Ill.App.2d 504, 514, 156 N.E.2d 763, 768; *Jepsen v. Board of Education* (1958), 19 Ill.App.2d 204, 208, 153 N.E.2d 417, 419.

In *Meridith v. Board of Education* (1955), 7 Ill.App.2d 477, 486, 130 N.E.2d 5, 10, the court stated:

> "The best interest of the schools of the district is the guiding star of the Board of Education and for the courts to interfere with the exercise of the powers of the Board in that respect is unwarranted assumption of authority and can only be justified in cases where the Board has acted maliciously, capriciously and arbitrarily."

■■ In our opinion, there is sufficient evidence in the record to support

the Board's finding that plaintiff's conduct was irremediable. The sabbatical leave section of the School Code, which plaintiff testified was read aloud to her, expressly stated that the failure to comply with its terms "shall constitute a cause for removal from teaching service." (Ill. Rev. Stat. 1971, ch. 122, § 24—6.1.) Plaintiff submitted a plan for full-time resident study, yet attended school part time on a non-residency basis and did not advise the Board of her reduced class program. Further, the record shows that plaintiff stopped taking classes 56 days prior to the end of the school term, although her salary continued during this period. We think this pattern of conduct was sufficient to support the Board's finding of irremediability.

In *Yuen v. Board of Education of School District No. 46* (1966), 77 Ill.App.2d 353, 222 N.E.2d 570, an unauthorized leave of 1 day was found to be irremediable. Here, plaintiff failed, without authority, to perform her teaching duties for 52 days during which she was not enrolled in any classes. In view of the foregoing, we think the Board's decision of irremediability was not against the manifest weight of the evidence.

Plaintiff argues that the remediable cause provision contained in section 24—12 of the School Code is applicable to the subject matter in the instant case. Pursuant to that section, she argues, she should have been given notice of the dischargeable conduct and the opportunity to take corrective action.

The section upon which plaintiff relies specifies the procedure to be followed in dismissing a tenured teacher, but it does not in specific terms define what constitutes a remediable cause. That section provides in pertinent part:

> "Notwithstanding the entry upon contractual continued service, any teacher may be removed or dismissed *for the reasons or causes provided in Section 10—22.4* in the manner hereinafter provided. * * * Before service of notice of charges on account of causes that are considered remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges." Ill. Rev. Stat. 1971, ch. 122, § 24—12. (Emphasis added.)

Section 10—22.4, referred to in the foregoing provision, gives a school board the following authority:

> "To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause and to dismiss any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24—10 to 24—15, inclusive."

We find it significant that the causes for dismissal set forth in section 10—22.4 are general terms subject to different interpretations. To limit this broad language, section 24—12 provides that a tenured teacher must be given a reasonable warning of the objectionable conduct. The relationship between a board's general power to dismiss under section 10—22.4 and the duty to give warning where the causes are remediable was discussed by the court in *Keyes v. Board of Education* (1959), 20 Ill. App.2d 504, 508, 156 N.E.2d 763, 765-66, wherein the court said:

> "As a safeguard against the arbitrary and capricious exercise of such power, the Act requires that if the causes assigned for dismissal of a teacher are remediable, the Board before serving notice of charges must give such teacher a written warning, stating the specific causes which, if not remedied, may result in charges. *The underlying reason for such provision, is the fact that the causes for dismissal referred to in Secs. 6—36 and 7—16 [presently Section 10—22.4] of the School Code are general in their nature.*" (Emphasis supplied.)

In contrast to section 10—22.4, the section pertaining to sabbatical leaves specifically defines the cause for dismissal. This section does not state that warnings are required in cases arising under it. Since this section, which specifically defines the cause for dismissal, was read aloud to plaintiff prior to granting her leave, we find no merit in her claim that she was not warned in advance of the consequences of her conduct.

We are not unsympathetic to the trial court's feeling that plaintiff deserved an opportunity to remedy her misconduct in view of her 13 years of teaching experience in the district. However, the language of the statute is clear. The legislature was cognizant of the possibility that a teacher might promise to devote the entire period of the leave to resident study but then use the paid leave for other purposes. The penalty for this type of conduct was set forth in unequivocal terms. The statute provides that such conduct would be cause for dismissal.

Accordingly, we reverse the trial court's finding that the causes for plaintiff's dismissal were remediable.

Thirdly, plaintiff contends that the conduct of the School Board was violative of her constitutional right to freedom of association. She alleges that the Board dismissed her in retaliation for her union activities, in violation of the freedom of association clause in the First Amendment of the Constitution of the United States.

We find no evidence in the record to support this allegation. In fact, plaintiff testified that she enjoyed very cordial relationships with the Board.

Since the record does not disclose any evidence to support plaintiff's

assertion that the Board's motivation in dismissing her was retaliatory, we affirm the trial court's finding that there was no violation of her first amendment rights.

Finally, plaintiff argues that the Board deprived her of property without due process of law. She concedes that the Board essentially followed the procedures for dismissal provided in the School Code (Ill. Rev. Stat. 1971, ch. 122), but, nevertheless, urges us to reverse because the hearing was held before the Board.

A similar argument was before this court in *Tetmeir v. Board of Education* (1972), 5 Ill.App.3d 982, 986, 284 N.E.2d 380, 383. There, plaintiff contended that the board was not the proper party to conduct a hearing regarding his dismissal because the board had originally passed the resolution relieving him of his duties. This court stated:

> "This contention ignores the fact that a school board is charged with the responsibility of dismissing a teacher 'whenever, in its opinion, the interests of the schools require it,' (Section 10—22.4 of the School Code, Ill. Rev. Stat., Ch. 122), and the school board has been held to be the trier of facts under Section 24—12 of the School Code. (*Yuen v. Board of Education of School District No. 46* (1966), 77 Ill.App.2d 353.)"

Moreover, in *Lombardo v. Board of Education* (1968), 100 Ill.App.2d 108, 115, 241 N.E.2d 495, 498, the court stated:

> "The record discloses the hearing was conducted strictly in accordance with the provisions of the Teacher Tenure Act, which safeguards the rights of both Board and Teacher, and carefully delimits the nature of dismissal proceedings * * *. We are not at liberty to interfere with the discretionary authority vested in the School Board absent arbitrary or capricious action * * *."

■■ In the present case, the record shows that the Board fully complied with the procedural requirements of the Teacher Tenure Act. That Act has repeatedly been held to meet the standards of due process. Therefore, we affirm the trial court's finding that the Board did not violate the plaintiff's right to due process.

We affirm the trial court's findings that the Board's decision was not contrary to the manifest weight of the evidence, that the Board did not violate plaintiff's right to freedom of association, and that the Board did not fail to accord plaintiff due process of law. The finding that the cause for discharge was remediable is reversed.

Affirmed in part; reversed in part.

ADESKO, P. J., and BURMAN, J., concur.