JOHN D. FENDER, Plaintiff-Appellee, *v.* SCHOOL DISTRICT NO. 25, ARLINGTON HEIGHTS, *et al.*, Defendants-Appellants.

First District (3rd Division) No. 59283

Opinion filed April 1, 1976.

Allyn J. Franke and Ralph Miller, both of Franke and Miller, of Chicago, for appellants.

Speranza and Veverka, of Chicago (Donald J. Veverka, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Cook County reversing the administrative decision of the defendant Board of Education of District No. 25, Arlington Heights, dismissing plaintiff John Fender as a teacher.

At the time of his termination, plaintiff was employed by the Board as a teacher with tenured status. He taught seventh grades at a junior high school. He also was president of the Arlington Teachers Association. During ten years of teaching in the district, plaintiff had received no disciplinary sanctions from the Board and his evaluations as a teacher were good.

On March 29, 1972, the Board voted to terminate plaintiff's employment as of November 2, 1972, and to suspend him until that date. The charges were that plaintiff had demonstrated continuing inability to exercise mature judgment and restraint in dealing with classroom problems; that he had demonstrated a continuing pattern of cruelty and violence in his relationship with students; that on four occasions in the

current school year, plaintiff had struck students notwithstanding administrative admonitions that he refrain from doing so; that plaintiff was no longer qualified to teach in the district; and that the best interest of the school required his dismissal. The resolution further provided that the causes set forth for the dismissal were not remediable.

Upon receiving formal notice of dismissal plaintiff requested a bill of particulars and a public hearing. Both requests were granted. The public hearings, conducted on five days, began on August 22, 1972.

On September 6, 1972, the Board affirmed its decision to terminate plaintiff's employment, specifically finding that the evidence supported the charges, and that plaintiff's conduct was irremediable. Thereafter, plaintiff filed a complaint under the Administrative Review Act. (Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*) The circuit court reversed the Board's decision, and it appeals.

When reviewing proceedings under the Administrative Review Act, this court must determine whether the procedures required by law were taken by the administrative agency and, if so, whether the decision of the agency was against the manifest weight of the evidence. *Yesinowski v. Board of Education*, (1975), 28 Ill. App. 3d 119, 328 N.E.2d 23; *Waller v. Board of Education* (1973), 13 Ill. App. 3d 1056, 302 N.E.2d 190.

Under the Illinois School Code (Ill. Rev. Stat. 1971, ch. 122, par. 10—22.4), a board may dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause. A school board also has the right to dismiss a teacher whenever, in its opinion, such teacher is not qualified to teach or whenever the interests of the school require it. Before the power of dismissal may be exercised against a teacher with tenure, however, the Board must comply with the statutory procedures specified in the Teacher Tenure Act. (Ill. Rev. Stat. 1971, ch. 122, par. 24—12.) That section provides that if the charges assigned for dismissal are "account of causes that are considered remediable," the Board, before serving notice of dismissal, must give the teacher a written warning stating the causes which, if not removed, may result in discharge.

■■ In this case plaintiff was given no written warning of the causes prior to the notice of discharge. Plaintiff urges that the causes for dismissal were remediable, that the Board was required to give him warning and opportunity to take corrective action. The Board having failed to give such written warning, plaintiff maintains that it could not dismiss him. The Board counters that its findings as to cause and irremediality were clearly justified by the evidence and that the trial court incorrectly reversed its decision.

In the present case, the bill of particulars recited four instances during the school year in which plaintiff struck children in the face and/or head. At the public hearings, the testimony related primarily to these matters.

Plaintiff admitted striking the four children but claimed that corporal punishment was allowed and widely used in the district. The Arlington Teachers Manual recited that corporal punishment was not forbidden by law, but directed that such punishment be exercised only as a last resort. Teachers at the instant school were required to inform the principal whenever such punishment was administered.

The facts of the first incident are largely undisputed. Jon Mendrella disturbed another class and then refused to apologize to the teacher. Mendrella, an eighth grader, was 5'10" or 5'11," the same height as plaintiff. When plaintiff intervened Mendrella swore at him, and plaintiff struck him in the face. Assistant Principal Robert Basofin testified that he met Mendrella in the hall and noted that his ear was red from the blow. Basofin later advised plaintiff that under such circumstances the principal or he should be called.

The next incident concerned David Grier, a pupil described by Basofin as "extremely dependable, honest and polite" and a member of the student council. Basofin testified that on February 25, 1972, he was in the school cafeteria when he heard plaintiff yelling at Grier and saw him strike the pupil in the face. Plaintiff had overheard Grier teasing the lady employees in the serving line and struck him as punishment for his disrespect. Later, the ladies told Basofin that they engaged in daily banter with Grier and that his remark was not disrespectful. Basofin reported these facts to plaintiff and indicated that the situation had not warranted corporal punishment. Plaintiff's account of the incident differed only in that he denied Grier was crying after the incident and he denied Basofin discouraged his use of corporal punishment.

The next incident involving seventh grader Jay Truelson, occurred on May 3, 1972. On that day a disturbance occurred in plaintiff's classroom during his absence. Another pupil pointed to Truelson as the offender. Without further investigation, plaintiff admitted that he slapped the boy twice in the face with his open hand. Plaintiff's account was disputed by Truelson who testified that plaintiff grasped his hair, banged his head twice against the desk and then slapped him twice in the face. Plaintiff later discovered that he had punished the wrong child and apologized to the class.

After this incident Truelson's father came to the school and angrily complained of plaintiff's conduct. Basofin testified that several days later he had a conference with plaintiff and admonished him to stop striking the students. According to Basofin, plaintiff stated that he had learned his lesson and that it would not happen again. Plaintiff denied the exchange, stating that Basofin never prohibited his use of corporal punishment.

On June 1, 1972, the fourth incident occurred. Another teacher reported to plaintiff that Linda Calvert and several of plaintiff's other pupils had

been disruptive during plaintiff's absence. Plaintiff testified that he reprimanded the class and particularly warned Linda that her behavior was unacceptable. Later in the class period he observed Linda talking and slapped her across the face four times. According to plaintiff, Linda did not react to the punishment and remained at her desk until the end of class.

Linda Calvert denied receiving an admonition prior to being struck by plaintiff. She testified that she and several other students were excused from the first half of plaintiff's class on that day. Shortly after arriving, she spoke to another student. Without warning, plaintiff approached and slapped her head against the table, held her by the hair, and then slapped her face ten to thirteen times. She wore braces and the blows caused cuts on the inside of her mouth. Barbara Fuggutti, another pupil in the class, testified that the incident occurred about five minutes after Linda's arrival. Barbara further testified that plaintiff pounded Linda on the head, grabbed her hair, and administered "about five hard slaps" across her face.

Following the incident, school principal Frank Sanetelli saw Linda in the school nurse's office and testified that she was hysterical and crying. That afternoon, the principal and assistant principal met with plaintiff and forbade further use of corporal punishment. According to plaintiff, this was the first time he was so informed. Several days later, Linda Calvert's parents filed a criminal complaint against plaintiff.

The bill of particulars recounted two other instances involving plaintiff. One instance occurred in 1966 and was evidenced by a memorandum written by the then principal Joseph Beacom. The memorandum indicated that plaintiff struck a sixth grade student in the head; that the child's father complained; and that school officials counselled plaintiff about use of corporal punishment and about shouting and screaming. Beacom was deceased at the time of the present hearings and no direct testimony concerning this incident was adduced.

The other incident listed in the bill of particulars referred to the striking of a student in 1969. Basofin testified that he observed plaintiff striking a student with both hands, and later admonished him about his use of corporal punishment. According to Basofin, plaintiff replied that corporal punishment was necessary to make the children listen and obey. Basofin wrote the details of the incident and conference in a written memorandum. Copies of the Beacom and Basofin memoranda were attached to the bill of particulars. Plaintiff testified that he did not recall the 1966 incident and denied telling Basofin that corporal punishment of pupils was necessary.

Twelve witnesses testified on plaintiff's behalf. A present student, a past student, and one mother who had three children taught by plaintiff testi-

fied that he was a good teacher. Four of plaintiff's fellow teachers, including department head Earl Schatz, testified that plaintiff was a well prepared and able teacher. Another teacher testified that on three occasions over the last four years she had hit students in the face. The same witness testified that on two occasions she saw assistant principal Basofin strike children in the face.

In addition to the testimony already mentioned, plaintiff testified that corporal punishment was allowed and commonly administered in the school district. He also testified that as president of the Arlington Teachers Association he had represented the teachers in negotiations with defendant.

A cause for discharge may be deemed irremediable if the evidence indicates that damage had been done to the students, the faculty, or the school itself, and that the damage could not have been corrected if timely written warnings had been given by the teacher's superiors. (*Yesinowski v. Board of Education* (1975), 28 Ill. App. 3d 119, 328 N.E.2d 23.) The Board of Education has the discretion to determine, in the first instance, whether a cause is remediable and to confirm that finding at the conclusion of the hearing. (*Hauswald v. Board of Education* (1958), 20 Ill. App. 2d 49, 155 N.E.2d 319.) An administrative determination as to remediability involves an exercise of judgment and the Board's finding may not be reversed by the court unless it is manifestly against the weight of the evidence. *Waller v. Board of Education* (1973), 13 Ill. App. 3d 1056, 302 N.E.2d 190; *Yuen v. Board of Education* (1966), 77 Ill. App. 2d 353, 222 N.E.2d 570; *Meridith v. Board of Education* (1955), 7 Ill. App. 2d 477, 130 N.E.2d 5.

In the present case, plaintiff admitted striking students on the face or head on four occasions during the school year. Parents complained of plaintiff's actions and, in one instance, filed criminal charges against him. The assistant principal testified to several specific instances of counseling plaintiff concerning the undesirability of the latter's conduct. Although plaintiff denied these conversations, the Board as trier of fact had the right and duty to determine the credibility of the witnesses. (*Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126.) In light of all the evidence before it, the Board was justified in finding plaintiff guilty of the charges set forth in the notice of dismissal. The record demonstrates that in at least three incidents unreasonable and unjustified corporal punishment was inflicted. The damage was done and the injury could not be repaired or remedied. The Board's determination that plaintiff's deficiencies were irremediable contains substantial foundation in the record. The Board, therefore, was not required to give written notice of such defects before initiating action to dismiss plaintiff.

See *Glover v. Board of Education* (1974), 21 Ill. App. 3d 1053, 316 N.E.2d 534, *aff'd*, 62 Ill. 2d 122 (1975).

■■■ Plaintiff also argues that the authority of a board to determine remediability is an unlawful delegation of discretionary power without adequate standards. We cannot agree that the power given a Board is unconstitutional. It is true that the standard governing the written warning requirement is expressed in general terms—"causes that may be deemed to be remediable." However it is also true that the unforeseeable circumstances which may arise in school districts throughout the State make greater particularity impossible. As was stated in *People v. Illinois Toll Highway Com.* (1954), 3 Ill. 2d 218, 233, 120 N.E.2d 35, 43: "When it is necessary, the legislature may commit to others the responsibility for the accomplishment of the details of its expressed purpose. The scope of permissible delegation must be measured in terms of the complexity and diversity of the conditions which will be encountered in the enforcement of the statute." This statement, we believe, applies to a school board's authority to determine remediability.

Plaintiff also complains that the Board's conduct violated his right to equal protection. Plaintiff suggests that he was selected for dismissal in retaliation for his activities on behalf of the teachers association. In support of this position plaintiff cites evidence other teachers in the district administered corporal punishment. Because only he has been discharged for this conduct, plaintiff maintains that an unjustifiable standard has been shown.

■■ To invoke the defense of selective prosecution, one must prove that the selection was based on an unjustifiable standard such as race, religion or some other arbitrary classification. (*Moss v. Hornig* (2d Cir. 1963), 314 F.2d 89.) While evidence in the present case demonstrates that teachers in the district sometimes employed corporal punishment, there is no indication that their action was as frequent or severe as that charged against plaintiff. Plaintiff's assertion that the Board's motivation was retaliatory finds no support in the record and the claim of selective prosecution cannot be accepted.

■■ Similarly, we reject plaintiff's claim that the Board deprived him of wages without prior notice or an opportunity to be heard. Plaintiff was suspended on June 29, 1972. The June 29 resolution did not provide for suspension without pay and, despite his status, plaintiff taught in the district's summer school program which ended prior to the present hearings. On September 6 the Board resolved that plaintiff be suspended without pay after payment of the final sum due him under the summer school contract. Accordingly, before any salary payment was halted, and before plaintiff lost any income, a full hearing had been completed.

Plaintiff's claim that he was deprived of property without due process is factually incorrect and devoid of merit.

■■ Plaintiff next contends that the Board was not the proper party to conduct the dismissal hearings. In light of defendant's investigative and prosecutorial functions, it is urged by plaintiff that the Board did not qualify as an unbiased decision maker and hearings before it constitute a denial of due process. Similar arguments were rejected by this court in *Pittel v. Board of Education* (1974), 20 Ill. App. 3d 580, 315 N.E.2d 179; *Tetmeir v. Board of Education* (1972), 5 Ill. App. 3d 982, 284 N.E.2d 380. Moreover, the United States Supreme Court in *Withrow v. Larkin* (1975), 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456, held that the multiple functions of an administrative board do not necessarily bias the administrative hearing. Absent facts demonstrating that a board's prehearing involvement foreclosed a fair consideration of evidence presented at the hearing, a due process violation is not shown. The record in the instant case contains no special facts or circumstances to demonstrate prehearing bias or prejudgment by Board members so as to impugn the fairness of the hearing.

Plaintiff next urges that he was not given a fair and impartial hearing. He complains that the Board, by refusing to grant him a six-week continuance, demonstrated its bias and caused him unreasonable hardship in presenting his case.

■■ An administrative agency possesses broad discretion as to whether it will allow a motion for continuance. (*Robert N. Nilles, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 890, 308 N.E.2d 640.) Here plaintiff originally had 35 days from the time he received notice of charges against him until the date hearings were scheduled to commence. Upon receiving his motion for a continuance, the Board delayed the hearing an additional two weeks until August 22. We cannot say that the Board abused its discretion by denying plaintiff the lengthy continuance requested. The Board reasonably wished to complete the hearings prior to commencement of the fall school term. The present case differs fundamentally from the "highly unusual" circumstances that existed in *Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754, the authority relied on by plaintiff.

Plaintiff also complains that the Board restricted evidence of Calvert's and Truelson's misbehavior to the day preceding the incidents, while plaintiff wished to introduce evidence that they had misbehaved continuously to demonstrate corporal punishment was "a last resort."

■■ Concerning Truelson, uncontroverted evidence indicated that he was not misbehaving at the time corporal punishment was administered. Plaintiff concedes that he struck Truelson in error. In light of these circumstances, we can conceive of no purpose that would be served by

evidence of Truelson's past misbehavior. Moreover, the Board, in its findings, expressly recognized that some of the students involved were difficult disciplinary problems. However difficult the student's prior history, the Board determined that striking children in the face or head was unjustifiable. The Board, as finder of fact, had the discretion to make this determination. In view of the evidence, we cannot say that plaintiff was substantially prejudiced by the Board's refusal to admit evidence of the students' past misdeeds.

Plaintiff finally attacks the procedure followed by the Board during the hearings. The complaint for administrative review recited that after termination of the hearing and before rendering a decision, the district superintendent and opposing counsel were present at a meeting of the Board out of the presence of plaintiff and his counsel. This meeting took place on August 29, and the Board's decision was rendered on September 6. The Board did not deny that the parties were present. On review plaintiff maintains that the Board, by meeting with a witness and counsel outside his presence, deprived him of his constitutional right to a fair trial. Although the record contains no reference to the meeting, plaintiff urges the exceptional circumstances require us to review the matter.

Generally, a court cannot go outside the record to review any finding, determination or decision of an administrative agency. (Ill. Rev. Stat. 1973, ch. 110, par. 274.) Even if, in the instant case, this restrictive provision did not apply, we do not think plaintiff has established a due process violation so as to require a new hearing.

■■■ The attorney representing an administrative agency should not participate in its final decision. (*Yuen v. Board of Education* (1966), 77 Ill. App. 2d 353, 222 N.E.2d 570.) It is also true that an administrative body should not receive an argument of one party without notice to the other. (*North Federal Savings & Loan Association v. Becker* (1962), 24 Ill. 2d 514, 182 N.E.2d 155.) However, on administrative review the plaintiff has the burden of proving the issues raised in the complaint. (*Missouri Pacific R.R. v. Commerce Com.* (1948), 401 Ill. 241, 81 N.E.2d 871.) To establish the alleged due process violation in the instant case, plaintiff relies solely on the fact that opposing counsel and the district superintendent were present at a Board meeting on August 29. There is nothing to indicate that either party offered evidence, addressed the Board, or took part in deliberations. We are not prepared to say that the district superintendent's or counsel's presence at the meeting, in and of itself, establishes that plaintiff was deprived of a fair trial. Though the presence of the individuals at the meeting was an error, plaintiff failed to show that the error was so serious as to violate his constitutional rights and render the five-day hearing a nullity. The Board's decision to dismiss plaintiff may not be reversed on this ground.

For the reasons stated, the judgment of the circuit court of Cook County overruling the administrative decision of the Board of Education of District 25 is reversed.

Judgment reversed.

DEMPSEY and McGLOON, JJ., concur.