AUDREY LEE KUROWSKI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kurowski v. Commissioner
Docket No. 3693-83.
United States Tax Court
T.C. Memo 1989-149; 1989 Tax Ct. Memo LEXIS 149; 57 T.C.M. (CCH) 32; T.C.M. (RIA) 89149; April 5, 1989
Stephen G. Katz, for the petitioner. David Zoss, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: The sole issue for consideration is whether $ 12,862 petitioner received from her former employer in 1980 is excludable from income as damages received on account of personal injury or sickness under section 104(a) (2). [1] Other issues raised in respondent's December 10, 1982, notice of deficiency have been settled by the parties. *150 FINDINGS OF FACT Petitioner resided in Illinois at all times relevant to this proceeding. The stipulation of facts and attached exhibits are incorporated herein by this reference. In 1970, petitioner began her employment as a teacher with the Community Consolidated School District 59, Cook County, Illinois (School District). In 1974, petitioner was involved in divorce proceedings with her then-husband. These proceedings were finalized in 1975, after 17 court hearings. During the course of her divorce proceedings, petitioner began experiencing psychiatric problems, which she had never encountered previously. In the spring of 1974, petitioner exhibited behavioral and emotional problems that were noticed by her colleagues and superiors. The School District subsequently required petitioner to be examined by Dr. Rolando de la Torre, a psychiatrist. Dr. de la Torre determined that petitioner's psychiatric status rendered her incapable of adequately discharging her duties as a teacher. On August 23, 1974, petitioner requested and was granted a leave of absence without pay from her tenured position with the School District. On January 30, 1975, petitioner was admitted to Forrest *151 Hospital for psychiatric treatment under the care of Dr. Robert P. Cutler. At that time, petitioner was incompetent and a ward of the State of Illinois. On March 21, 1975, an attorney for the state requested that the School District extend petitioner's leave of absence. This request was granted. Petitioner remained at Forrest Hospital until June 11, 1975, when she was discharged. Dr. Cutler reported to the School District on June 23, 1975, that petitioner was free of psychiatric symptoms. Dr. de la Torre examined petitioner on July 31, 1975. He reported to the School District, on August 29, 1975, that petitioner had improved since September 1974, but that the improvement appeared to be due to regular medication petitioner received while at the hospital. On December 12, 1975, the Circuit Court of Cook County adjudged petitioner to be competent. In January 1976, petitioner requested an extension of her leave of absence to finish work on a Master's degree, which request was granted by the School District. Petitioner received her Master's degree in August 1976. On August 12, 1976, petitioner requested that the School District return her to active status. The School District *152 required that petitioner be examined by Dr. de la Torre or Dr. Cutler before returning to work. Dr. Cutler saw petitioner on October 12, 1976, for evaluation. He reported that petitioner was suffering from a chronic mental illness and that her prognosis was guarded to poor. He reported that petitioner could function at a "borderline" level. Based upon Dr. Cutler's report, the School District determined that petitioner was not then capable of teaching. On or about October 25, 1976, petitioner was admitted to the psychiatric ward of Northwest Community Hospital. She was treated by Dr. Argelia Heller, a psychiatrist. On or about April 28, 1977, Dr. de la Torre submitted a report to the School District indicating petitioner should be allowed to return to work. Also in April 1977, petitioner was certified as competent to return to work by Dr. David F. Busby, another psychiatrist. Petitioner returned to work at the start of the school year in September 1977. On January 30, 1978, based in part upon reports by a social worker and a psychologist, the school once again required that petitioner be evaluated by Dr. de la Torre. In a report dated February 9, 1978, Dr. de la Torre stated *153 petitioner was disabled from a psychiatric standpoint and not capable of functioning as a teacher. He also stated petitioner was suffering from a paranoid psychosis that caused petitioner to experience delusions of being persecuted and discriminated against. On or about March 7, 1978, the School District advised petitioner that she was not able to continue her teaching assignment, due to her mental illness and need for psychiatric treatment. Petitioner was also directed by the School District to be treated by Dr. de la Torre. She was again placed on unpaid leave status. Dr. Heller treated petitioner from March 1, 1978, to March 23, 1978, and certified that petitioner was able to return to work on March 27, 1978. Petitioner was not treated by Dr. de la Torre. In correspondence to the School District dated April 7, 1978, Dr. de la Torre stated he had met with petitioner on the previous day and his opinions concerning her condition had not changed since his February 9, 1978, report. On or about September 6, 1978, the School District initiated dismissal proceedings to remove petitioner from her tenured position. In the dismissal proceeding, attorney Jane Carfagno Clark (Clark) *154 represented petitioner. Frank Hines (Hines) and his partner, Ray De Maertelaere (Maertelaere), represented the School District. On September 18, 1978, the School District provided petitioner with a formal Bill of Particulars and Notice of Dismissal relating to the previously filed dismissal charges and a copy of the resolution of the Board of Education authorizing the Notice of Dismissal. The Bill of Particulars stated: 1.) For a five month period beginning September 1, 1977, your job performance and overall behavior were regularly observed and evaluated * * *. It was observed that you frequently disobeyed, forgot, or otherwise failed to follow instructions; were insubordinate; lost your temper and were belligerent and defiant; behaved irrationally; appeared distant, distraught and disoriented; and were incapable of handling routine teaching duties. These observations were discussed with you in numerous conferences, however when there was no improvement, it was finally concluded that it was appropriate to determine if psychiatric attention was warranted or required. 2.) You were examined by Dr. Roland [sic] de la Torre on February 13, 1978, immediately following which he *155 informed you and the district that you were not capable of functioning as a teacher and that you should undergo psychiatric treatment. You did not follow his advice. 3.) Thereafter, a conference was held * * * on February 23, 1978, at which time you were advised that you must remedy your deficiencies and correct your aberrational behavior, and that you were to comply with Dr. de la Torre's recommendation and proceed with psychiatric treatment. You did not comply. The Bill of Particulars went on to state that petitioner, on numerous occasions (numbers 4 through 10 in the Bill of Particulars), had refused to follow the School District's directive to undergo treatment from Dr. de la Torre. The Notice directed that a dismissal hearing be held on November 1, 1978. Hines corresponded with the School District regarding the dismissal hearing in a letter dated October 2, 1978. One of petitioner's best defenses, Hines indicated, was that a teacher could not be dismissed for temporary mental incapacity. He suggested a settlement possibility (originally suggested by Clark) whereby the School District could work out a fairly long term unpaid leave with the understanding that petitioner *156 could not return to work unless certified fit to do so. A draft settlement proposal was submitted by Clark to Hines, incorporating those general terms. In general, petitioner would be granted a leave of absence until February 1980. If two psychiatrists, chosen by petitioner and the School District respectively, certified her fit to teach, she would have the opportunity to teach during the 1980-1981 school year. If either psychiatrist found her permanently disabled, petitioner agreed to resign. If either psychiatrist found her temporarily disabled, petitioner would have the option of another year of unpaid leave. At the end of such additional year, petitioner agreed to resign if either psychiatrist found her unfit to teach. This agreement was never executed. In early 1979, the dismissal proceeding was postponed by the hearing officer at the joint request of counsel due to petitioner's apparent inability to participate in the dismissal proceeding. On March 15, 1979, Dr. Heller reported that petitioner suffered from a condition that would permanently impair her abilities as a teacher. Somewhat to the surprise of the School District's attorneys, the hearing officer had articulated *157 the pertinent issue in the dismissal proceeding as whether the School District could require treatment by a physician not of the teacher's own choosing. Because of the unsettled state of the law in the area, and the additional costs and fees associated with litigation, including appeals, the School District's attorneys recommended a settlement along the lines of another proposal made by Clark. The parties ultimately negotiated and carried out the settlement, without a written agreement. The terms of the settlement were described in a letter dated October 1, 1979, from Maertelaere to the School District: A. That the Board shall pass a resolution accepting Audre Kurowski's resignation and will withdraw the prior Dismissal Resolutions; B. District 59 and the Board will state to anyone inquiring as to the reason for Audre Kurowski's departure from District 59 that she left because the treatments required for her mental illness conflicted with her scheduled teaching assignment time requirements; C. That furthermore, assuming Audre's performance was satisfactory before the onset of her mental illness, that anyone inquiring as to her performance would be advised her performance *158 was satisfactory before the onset of her illness; D. That Audre Kurowski would be paid the total amount of $ 12,862 constituting payment to her of three-quarters of her last year's annual salary; and E. That the compensation payment aforesaid be considered by the Board as settlement compensation and not salary so that Audre Kurowski would receive the more favorable tax treatment accorded such settlement compensation as opposed to payment of salary or wages. In a letter concerning the settlement from Hines to James Fay, Superintendent of Schools, he indicated "Now, her attorney has convinced Kurowski to resign in return for a cash payment, most of which would have been paid to Kurowski as salary if dismissal hadn't been filed when it was." Petitioner received the settlement proceeds in 1980. She did not report them on her income tax return filed for that year. OPINION The only issue for our consideration is the characterization of $ 12,862 petitioner received as settlement proceeds from the School District. Section 61 includes in gross income all income from whatever source derived. However, section 104(a)(2) provides that the amount of damages received (whether by suit *159 or agreement) on account of personal injuries or sickness is not included in gross income. The damages referred to are based upon tort or tort-type rights. Sec. 1.104-1(c), Income Tax Regs.
Petitioner argues that she suffered embarrassment and humiliation at the hands of the School District, and that the District attempted to force medical treatment upon her. Therefore, petitioner concludes that the settlement proceeds were excludable as damages for personal injuries. Respondent argues that petitioner never asserted a tort or tort-like claim for damages--the only proceeding in this case was the School District dismissal hearing. In addition, respondent argues that petitioner has not proven what part of the proceeds were for personal injuries, and that the settlement was in exchange for employment-type rights. To determine excludability under section 104(a)(2), we must look at the origin and character of the claim asserted. Thompson v. Commissioner,89 T.C. 632 (1987), affd. 866 F.2d 709 (4th Cir. 1989); Threlkeld v. Commissioner,87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988); Bent v. Commissioner,87 T.C. 236 (1986), *160 affd. 835 F.2d 67 (3d Cir. 1987); Seay v. Commissioner,58 T.C. 32 (1972). We have looked to the written terms of settlement agreements to determine the origin and allocation of settlement proceeds. Metzger v. Commissioner,88 T.C. 834 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988). In this case, there is no written settlement agreement, only the correspondence between counsel for the School District and petitioner. In such cases, the focus is on the intent of the payor. Knuckles v. Commissioner,349 F.2d 610 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Bent v. Commissioner, supra.
The School District's purpose for instituting the dismissal proceeding was to remove petitioner from her tenured position. She had become ineffectual as a teacher, she had sustained long periods of unpaid leave, and, after two unsuccessful attempts, it did not appear that she would be able to teach again. Petitioner's incapacity is well documented in the record. While we sympathize with petitioner, we must reject any claim that the School District embarrassed and humiliated *161 her. There is no evidence, other than petitioner's testimony, that the settlement proceeds represented damages for embarrassment or humiliation. From this perspective, it does not appear that the settlement proceeds were compensation for personal injury caused by the School District, nor does it appear that the School District intended to compensate her for personal injuries. Petitioner asserts that she "became embroiled in a dispute with the school district because the district was seeking to infringe upon her right to be medically treated by a physician of her selection, not her employer's." From the evidence in the record, we cannot conclude that this was the focal point of the dispute or the settlement. Over the long history of this matter, the central dispute focused on petitioner's ability, or inability, to teach. It was only at the dismissal stage of the proceedings that the issue became whether or not the School District could compel examination or treatment by a selected physician. Petitioner, in effect, asks us to conclude that the settlement was payment for violation of her right to select a physician of her choice. The absence of any claim for damages, while not *162 fatal, (see Byrne v. Commissioner,90 T.C. 1000, 1006 (1988)) tends to indicate that the settlement was not consideration for violation of her right to select her own doctor. The settlement proceeds were not the result of a lawsuit by petitioner or a third party (see Byrne v. Commissioner, supra), but an action to dismiss petitioner from a tenured teaching position. Further, we have some difficulty with the conclusion that petitioner suffered any violation of her due process or privacy rights. "Protection of school children from teachers who have shown evidence of harmful, significant deviation from normal mental health is * * * not only a valid legislative concern but * * * a compelling state interest." Kochman v. Keansburg Board of Education,124 N.J. Super. 203, 305 A.2d 807, 812 (1973). "There is nothing unconstitutional about a state establishing a tenure system in which the state retains the prerogative to discontinue the teaching duties of teachers who are not * * * mentally competent * * *." Dusanek v. Hannon,677 F.2d 538, 542 (7th Cir. 1982). In both those cases, the constitutionality of statutes *163 requiring medical examinations was upheld. Further, Dusanek v. Hannon, supra, upheld the constitutionality of the Illinois procedure as comporting with due process. In addition, there is Illinois case law indicating that the School District could compel a teacher to submit to an examination by a psychiatrist chosen by the school board, so long as the selection was done in an unbiased manner. Tetmeir v. Board of Education of School District No. 149, Cook County,5 Ill. App. 3d 982, 284 N.E.2d 380 (1972). Wholly apart from the physician controversy, Illinois law provides that permanent, as opposed to temporary, mental incapacity, is a grounds for dismissal. Ill. Ann. Stat. ch. 122, section 10-22.4 (Smith-Hurd 1988). Dusanek v. Hannon, supra.Temporary incapacity lasts less than 1 year. If the School District waited just 1 year, petitioner's disability would become permanent. Even if petitioner underwent treatment (albeit by a doctor of her choice) during that period, we think that she would still have to be certified competent by some independent physician if she ever expected to teach in the School District again, tenure notwithstanding. *164 This is bolstered by the first proposed settlement, that would have required petitioner to undergo examinations by two physicians, and to voluntarily resign if either certified her permanently disabled from teaching after 1 year. Rather than a civil rights violation, we believe this case is more analogous to an employer "buying out" the contract of an employee. See Knuckles v. Commissioner, supra. Petitioner exchanged her tenure, which, in any event, would not likely last beyond a year, for the settlement proceeds at issue. This is supported by one of Hines' letters to the School District, indicating that petitioner resigned in return for a cash payment, most of which would have been paid as salary were it not for commencement of the dismissal hearings. This letter is more indicative of the payor's intent than the gratuitous reference that the proceeds should be tax free settlement proceeds. In addition, the computation of the settlement amount was based on three quarters of her last year's salary. While not relevant standing alone, this also supports respondent's position. Hines' letter also supports respondent's claim that the settlement proceeds were *165 not for personal injury, but payment of back salary, which is not excludable under section 104(a)(2). Thompson v. Commissioner, supra.In sum, we find that the $ 12,862 received by petitioner is not excludable from income. To reflect the foregoing and concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue.↩