**W. D. Keyes, Jr., Plaintiff-Appellant, v. Board of Education of Maroa Community Unit School District No. 2 of Macon and DeWitt Counties, Illinois, Maroa, Illinois, F. Paul Churchill et al., Defendants-Appellees.**

**Gen. No. 10,222.**

Third District.

February 17, 1959.

Rehearing denied March 30, 1959.

Released for publication March 30, 1959.

Kenneth A. Green, of Mattoon, for plaintiff-appellant.

Monroe & McGaughey, of Decatur, for defendants-appellees.

JUDGE CARROLL delivered the opinion of the court.

In a proceeding brought under the Administrative Review Act, the Circuit Court of Macon County, affirmed the decision of the Board of Education of Maroa Community Unit School District No. 2 of Macon and DeWitt Counties (hereinafter referred to as the Board) dismissing plaintiff as superintendent, principal and teacher of said district.

On the theory that a constitutional question was involved, plaintiff appealed to the Supreme Court. The result of such appeal was an Order transferring the case to this court.

The proceedings, culminating in the decision involved in this appeal, were initiated by the Board on May 23, 1957 with the adopting of a resolution providing for plaintiff's dismissal, effective November 2, 1957, and directing the Board's secretary to deliver a copy thereof to plaintiff. In the preamble to said resolution, it is recited that controversy, conflict and dissension have prevailed throughout the school district for several years and that the Maroa High School has been recently dropped from the list of schools accredited by the North Central Association of Colleges and Schools. The causes for dismissal specified are

506

substantially that plaintiff, superintendent of the school district, (1) has been the subject of much controversy, conflict and dissension, resulting in a condition detrimental to the best interests of the students in the district's schools, (2) has actively participated in fomenting such controversy, conflict and dissension, (3) has failed to properly co-operate with the Board of Education and his subordinate administrators and teachers. It is further recited in the resolution that it is for the best interests of the schools and students of the district that plaintiff be dismissed as superintendent, principal and teacher; that said causes for dismissal are irremediable and that said causes shall constitute charges within the meaning of Art. 24–3 of the School Code. Plaintiff acknowledged receipt of a copy of the resolution and requested and was granted a public hearing. He was suspended and relieved of all duty pending the public hearing. On July 10, 1957, at the conclusion of the hearing, the Board found the charges to have been proven and made its final determination, dismissing plaintiff.

Eliminating the argument devoted to constitutional questions, with which we are not concerned, the principal points, upon which plaintiff relies for reversal of the judgment of the circuit court, are that the Board lacked jurisdiction to conduct the hearing and that its decision is against the manifest weight of the evidence.

As to the first point, it is contended that the record fails to show compliance by the Board with that portion of Sec. 24–3 of the School Code (Chap. 122, Ill. Rev. Stat. 1957) which reads as follows: "Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges." Plaintiff insists that under the foregoing provision, he was entitled to receive a reasonable warn-

ing in writing as to the causes which might become charges and that failure of the Board to give such warning, deprived it of jurisdiction.

The Board of Education has the power to dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient causes. Art. 6–36 of the School Code. It also has the power to dismiss a teacher whenever in its opinion such teacher is not qualified to teach, or whenever, in its opinion, the interests of the schools require it. Art. 7–16 of the School Code.

■ ■ The Teacher Tenure Law (Art. 24, Secs. 24–1 and 24–8. Chap. 122, Ill. Rev. Stat.) provides that notwithstanding his or her entry upon contractual continued service, any teacher may be dismissed for the causes stated in Secs. 6–36 and 7–16 of the School Code. That the power of the Board to dismiss is in no way diminished by the Tenure Act, is clearly demonstrated by a provision in Sec. 24–2 thereof, which is as follows: "This section and succeeding sections do not modify any existing power of the board except with respect to the procedure of the discharge of a teacher and reductions in salary as hereinafter provided." The procedure which the Board is required to follow in exercising its power to discharge a tenure teacher is spelled out in the Act. As a safeguard against the arbitrary and capricious exercise of such power, the Act requires that if the causes assigned for dismissal of a teacher are remediable, the Board before serving notice of charges must give such teacher a written warning, stating the specific causes which, if not remedied, may result in charges. The underlying reason for such provision, is the fact that the causes for dismissal referred to in Secs. 6–36 and 7–16 of the School Code are general in their nature. If the causes, upon which the Board predicates its dismissal can, by their nature, be said to be remediable, then in order that the teacher may have an opportunity to remedy the same,

508

he or she is entitled to a warning notice of the specific charges constituting such causes. Obviously, compliance with this warning notice provision cannot be had unless, prior to giving a dismissal notice, determination is made as to whether the cause or causes relied upon are remediable. If this requirement is to be met, necessarily the authority to decide whether the assigned causes are remediable, must exist. In Meridith v. Board of Education of Community School Dist. No. 7, 7 Ill.App.2d 477, we held that the statute vests the Board of Education with discretionary power to initially determine, until a final hearing, whether or not the causes specified are remediable. The same opinion was expressed by the court in Biehn v. Tess, 340 Ill. App. 140 and Eveland v. Board of Ed. of Paris Union School Dist., 340 Ill. App. 308.

■ The determination of the Board in the first instance that the causes of dismissal are not remediable and its final decision on the hearing, are both subject to review. If the causes relied on in the instant case were in fact remediable, then the requirement that a written notice be given plaintiff was mandatory and failure to comply therewith, deprived the Board of jurisdiction.

■ It appears from the resolution, that plaintiff was thereby given notice that the Board was of the opinion that the interests of the schools required his dismissal. Thus the Board relied upon one of the causes specified in Sec. 7–16 of the School Code. While no attempt is made in the statute to indicate what may constitute such cause, nevertheless, it is one of the specified causes of removal. Hartmann v. Board of Education, Westville Township High School Dist. No. 220, 356 Ill. 577. The reasons assigned for the Board's opinion that the removal of plaintiff would be for the best interests of the schools are, (1) that plaintiff actively participated in fomenting controversy, con-

flict and dissension in the district, and, (2) that he had failed to co-operate with the Board and his subordinates. These were the specific charges against the plaintiff against which he was required to defend. The Board's determination that the causes were not remediable, involved the exercise of judgment. This court lacks power to over-ride such judgment unless the findings upon which it rests are manifestly against the weight of the evidence. Meridith v. Board of Ed., etc., supra.

We are confronted with a voluminous record, which in addition to scores of exhibits, includes 582 pages of testimony. Obviously any attempt at detailing the evidence would prolong this opinion beyond reasonable limits.

Reduced to essential matters, the record shows that plaintiff was superintendent of the Maroa District and also a teacher and principal at the high school from its formation in 1948 until his discharge in May, 1957; that the controversy which led to this litigation, began during a building construction program carried on by the Board in 1953 and 1954; that the matters involved were plaintiff's complaints concerning defects in construction and alleged illegal letting of contracts; that also a disagreement arose between the Board and plaintiff concerning the policies to be followed in administering district affairs; that plaintiff prepared statements of his criticism of the Board's handling of the building program and mailed same out to the public; that at student assemblies, plaintiff discussed his differences with the Board; that there apparently existed no area in the matter of school administration where plaintiff and the Board were in accord; that meetings of plaintiff and the Board members were marked by displays of intense feelings on the part of both and on one occasion there was a threat of physical violence to one of those attending the meeting; that

510

in the school board election of 1954, plaintiff was an issue; that in the district two factions developed, one favoring plaintiff and the other opposing him and his policies; that in March, 1954, the Board passed a resolution dismissing plaintiff for incompetency, negligence, insubordination and because the interests of the schools required such dismissal; that this resolution listed fifteen specific charges, including that of attempting to cause conflict in the community and with the Board; that in April, 1954, a majority of board members favorable to plaintiff were elected and the prior dismissal action was rescinded; that plaintiff took an active part in said election and was the principal issue therein; that plaintiff likewise participated in the 1955 and 1956 elections, which in each instance, resulted in retention of a pro-plaintiff majority on the Board; that in May, 1955, following an official visit to the school, the State Superintendent of Public Instruction commented on the lack of proper relationship between plaintiff and the Board and the school was placed on the conditional recognition list. That in 1955 and 1956 the North Central Association of Colleges and Secondary Schools issued a warning that continued lack of proper working relationship between the administrator and the Board would jeopardize accreditation of the school; that the 1957 election resulted in defeat of the candidates favored by plaintiff; that in May, 1957, the Maroa High School was dropped by the North Central Association from its list of accredited high schools; that the reason assigned for such action by the Association was the school's violation of certain criteria for accreditation and that in its letter advising plaintiff of the Association's action, the following appears:

"For several years the members of the Illinois State Committee and the Office of the Superintendent of Public Instruction have made every effort known to us

511

to assist in solving this problem in the Community Unit School District at Maroa. It appears to us that our efforts have been fruitless in many respects and that the situation rather than becoming improved has become progressively less satisfactory. Pivotal to the situation is unquestionably the extent to which you have become controversial in the community."

and that on May 23, 1957, the Board adopted the resolution dismissing plaintiff.

While the foregoing is but a brief resume of the evidence, we think it sufficiently depicts the factual picture in the district as it existed prior to and at the time the Board initiated the dismissal proceedings. That conditions in the Maroa District, as thereby reflected, were deplorable, no one could deny. Regardless of the origin of the spark originally igniting the fires of dissension that raged through the district, there rested upon the Board the duty to attempt elimination thereof and restoration of harmony between itself, the administrator and the public. Their efforts in that direction were begun by undertaking to dismiss plaintiff. Specific causes for dismissal were assigned and the Board determined that the same were not remediable. These causes would not appear to be such as by their very nature could be said to be remediable. The record shows that the employment of plaintiff, due to his repeated disagreement with the Board's policies, became such a controversial issue that it resulted in a battle between two factions, in which the interests of the schools were completely forgotten. This situation prevailed for several years and although plaintiff must have been aware thereof, the record indicates no effort on his part to remedy the same. There is evidence that as far back as May, 1955, the State Superintendent of Public Instruction commented on the lack of proper relationship between plaintiff and

the Board, thus it cannot be said that plaintiff was not afforded an opportunity to remedy or correct the causes which resulted in his dismissal. While plaintiff may have felt that the Board was to blame for the prevailing condition, this would not seem to be any excuse for plaintiff's failure to take some action directed towards correcting the situation upon which the State Superintendent of Public Instruction had commented. The fact that some of the blame for the dissension prevailing in the district might be placed upon the present Board or its predecessors is, in our judgment, immaterial. Conflict and dissension could not be permitted to jeopardize the welfare of the schools of the district and it was the duty of the Board to take such action, as in their judgment, was necessary to protect the interests of said schools from further injury.

 In view of what the record discloses, we are unable to say that the trial court erred in declining to interfere with the Board's determination that the causes were not remediable.

 Our courts have repeatedly held that the decision of an administrative agency will be set aside only where the same is without substantial support in the record or is manifestly against the weight of the evidence. Drezner v. Civil Service Commission, 398 Ill. 219; Pearson v. Board of Education, Community Unit School Dist. No. 5, 12 Ill.App.2d 44; Meridith v. Board of Ed. etc., supra. The foregoing rule does not permit the court to weigh the evidence or judge its probative value. Our review in this case is restricted to determining from an examination of the record, whether the decision of the Board finds support in the evidence or whether it is manifestly against the weight thereof. Plaintiff argues that there is no evidence indicating any substantial wrong doing on his part for at least two years prior to the date of the charges of May

23, 1957; and that his discharge by the Board elected in April, 1957, was not for cause but was politically inspired and unrelated to the interest of the school. The record does not appear to sustain this contention. As previously pointed out, there is evidence, that so far as lack of a working relationship between plaintiff and the Board is concerned, such condition persisted from 1953 until the dismissal notice was served. The action of the North Central Association, a neutral agency, in May, 1957, must be regarded as substantial evidence, that, as of that date, the cause of the condition had not been remedied.

With the wisdom of the decision of the Board we are not concerned. The scope of this review is limited to determining whether such decision finds support in the evidence. The discretionary power to determine whether the interests of the schools required plaintiff's dismissal is vested in the Board. This court is not authorized to interfere with the exercise of such power unless the determination upon which it rests, is manifestly against the weight of the evidence.

Upon careful examination of the record, we are unable to say that the decision of the Board is contrary to the manifest weight of the evidence and the judgment of the Circuit Court of Macon County is affirmed.

Affirmed.

ROETH, P. J. and REYNOLDS, J., concur.