RAY L. MORELLI, Plaintiff-Appellant, *v.* THE BOARD OF EDUCATION, PEKIN COMMUNITY HIGH SCHOOL DISTRICT NO. 303, TAZEWELL COUNTY, Defendant-Appellee.

Third District    No. 75-335

Opinion filed October 25, 1976.

Leiter, Newlin, Fraser, Parkhurst & McCord, of Peoria (Franklin R. Renner, of counsel), for appellant.

Kuhfuss & Kuhfuss, of Pekin (Harold Kuhfuss, of counsel), for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This appeal is from the judgment of the circuit court of Tazewell County affirming the administrative decision of the defendant, board of education, dismissing plaintiff, Ray L. Morelli, from his position as principal and teacher.

Pekin High School is divided into two campuses with the freshmen and sophomores going to the West Campus and juniors and seniors going to the East Campus. Each campus has its own principal and prior to his dismissal, plaintiff was principal of the West Campus. Mr. Art Keller is the East Campus principal and both principals are under the supervision of the superintendent, Mr. William Holman. Mr. Holman is responsible only to the defendant board of education.

The unusual facts of this case unfortunately require a somewhat lengthy recitation of the events which culminated in the dismissal of plaintiff. It was determined in a Columbia University report that Pekin High School was having a serious drug problem. Sometime during the middle of 1974, Lt. Biswell of the Pekin Police Department contacted the plaintiff seeking help in placing a drug informant on the West Campus. Plaintiff agreed to help provide information about the school, schedules, and also a means of obtaining the informant's admission to the school. With the help of local authorities, a 22-year-old woman named Susan Gidner, who had been a heroin addict, was selected to be the informant.

Ms. Gidner testified she first met with plaintiff in September, 1974, in a meeting at a truck stop and Lt. Biswell and a member of the school board, Charles Burson, were also present. It was their general consensus that Ms. Gidner did not appear young enough to pass as a student among the 14- and 15-year old freshmen and sophomores on the West Campus. It was agreed she would fit in on the East Campus. Ms. Gidner testified that plaintiff helped to prepare her class schedules and helped her work on a

rough draft of a false transcript that would be used to get Ms. Gidner into Pekin High School. The false transcript was prepared at Bloomington High School by an assistant principal that the plaintiff was acquainted with and Ms. Gidner was eventually enrolled on October 3, 1974. The assistance of Quincy High School in preparing the transcript had previously been sought by plaintiff, but Quincy had refused to provide any assistance. Neither the principal of the East Campus nor the superintendent or the defendant board of education were ever consulted or informed about the foregoing facts until November 18. Although two board members knew of the plan, the board was never officially consulted. All of the foregoing facts were substantially uncontroverted at the hearing.

Ms. Gidner also testified that during the series of meetings which took place prior to her enrollment on the East Campus, plaintiff had made certain statements about various members of the faculty and the principal of the East Campus. Plaintiff denied making these statements and the testimony of other individuals present at some of the meetings agreed with plaintiff's version of the facts. According to Ms. Gidner, plaintiff stated the names of three teachers and two coaches that he was sure were selling drugs to students. She was also told by plaintiff that one of these teachers was teaching deviate sexual practices and that a couple of others were "blatantly teaching communism and other left-wing points of view" in the classrooms. Plaintiff asked her to "take notes in class on things that were said by these teachers relating to these subjects, and hold them for him." Plaintiff also stated that June Keller, daughter of the principal of the East Campus, was involved in drugs and "that it would be to the advantage of the school system if both were dismissed." All of the foregoing statements were denied by plaintiff. Ms. Gidner quickly became dissatisfied with the job and finally quit on October 22, 1974. On November 18, 1974, the superintendent learned of the entire incident from Mr. Keller, principal of the East Campus. Mr. Keller had been informed of the incident on the same day by a teacher that Ms. Gidner had talked to several days earlier.

On December 19, 1974, the board of education adopted a resolution dismissing plaintiff from his employment and informing plaintiff of the charges against him. Plaintiff requested and was provided with a bill of particulars. After a hearing from January 21, 1975, to January 29, 1975, the board of education found that each of the charges had been proved by the evidence, that plaintiff's actions were irremediable, and confirmed plaintiff's dismissal. Plaintiff appealed then under the provisions of the Administrative Review Act. (Ill. Rev. Stat. 1975, ch. 110, pars. 264-279.) The trial court affirmed the action of the board and this appeal followed.

A myriad of contentions are raised by plaintiff on this appeal. He first urges error because the charges of the board are against the manifest

weight of evidence and the competent evidence fails to support a finding of irremediability. Four charges were lodged against the plaintiff by the defendant board as follows: one, he actively and wilfully participated in securing the enrollment of a person under false and forged credentials in classes of certain teachers at the East Campus of the school, without informing the principal of the East Campus, superintendent, or the board of education, and did so for purposes not disclosed to the principal of the East Campus, superintendent, or board of education; two, he actively and wilfully, with intent to discredit, caused, by word and deed, false accusations and suspicions to be directed toward certain teaching and administrative personnel to the effect that they were involved with or condoned drugs and drug usage in said school, thereby causing an adverse affect on the morale of the teachers and a breakdown in the confidence and respect for himself by the professional staff of said school, with which he is associated; three, he failed to maintain proper rapport with the superintendent and other members of the administrative staff of the said school and failed to carry out administrative policies and suggestions over a period of the past several months; four, his involvement in the matters above referred to in paragraphs one and two were outside his areas of responsibility and said activities and other activities outside his areas of responsibility have adversely affected his effectiveness in his primary assignment as principal of the West Campus. We disagree with plaintiff's contention that certain of the foregoing charges do not find *any* support in the evidence. Competent evidence was introduced to support each of the foregoing charges, but that does not dispose of the issue, since we must determine if the board's ultimate decision was against the manifest weight of evidence.

■■ The courts of this State have consistently held that the decisions of an administrative agency will be set aside only if manifestly against the weight of evidence or without substantial support in the record. (*Keyes v. Board of Education*, 20 Ill. App. 2d 504, 156 N.E.2d 763; *Pearson v. Board of Education*, 12 Ill. App. 2d 44, 138 N.E.2d 326.) It would unduly lengthen this opinion to set out each of the alleged evidentiary insufficiencies that plaintiff claims supports his position that the board's decision was against the manifest weight of evidence. Suffice it to say that substantial amounts of testimony were introduced during the eight-day hearing at which both parties were represented by competent counsel. Independent counsel was engaged to act as a hearing officer to insure that only competent evidence was admitted. As was previously noted, some of the facts substantiating the board's charges were strongly contested and the record is replete with instances of conflicting testimony. The procedure set forth in section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) places the responsibility for determining the facts with the board of education. In

such a quasi-judicial roll, it is the board, in the first instance, who must weigh the evidence presented and after due consideration to matters affecting credibility, decide whether sufficient evidence exists to support the charge. Our function as a court of review is limited to determining whether the decision of the board finds support in the evidence. (*Keyes v. Board of Education*, 20 Ill. App. 2d 504, 156 N.E.2d 763.) Given the nature of the charges, the uncontroverted as well as the conflicting evidence, we cannot say that the decision of the defendant confirming plaintiff's dismissal is against the manifest weight of evidence.

Nor can we say, as defendant urges us to do, that the board's finding of irremediability is not supported by the evidence. If the consequences of the conduct giving rise to the charges are remediable, a teacher is entitled to notice and an opportunity to correct the complained of conduct. (*Hauswald v. Board of Education*, 20 Ill. App. 2d 49, 155 N.E.2d 319.) An administrative determination by a board of education as to irremediability involves an exercise of judgment and the finding of the board will be reversed by a court only if against the manifest weight of evidence. (*Fender v. School District No. 25*, 37 Ill. App. 3d 736, 347 N.E.2d 270; *Waller v. Board of Education*, 13 Ill. App. 3d 1056, 302 N.E.2d 190.) The finding of irremediability by the board was well within the range of competent evidence and we will not disturb it.

Defendant also contends that the bill of particulars was inadequate in two respects. First, he claims that the bill of particulars was not prepared by the board as required by statute. Second, the bill of particulars does not relate to charge number four of the resolution of dismissal. We do not find the bill of particulars lacking in either respect. The first alleged deficiency in the bill of particulars stems from its preparation and submission to plaintiff by the board's attorney, Harold Kuhfuss, who had been the board's primary attorney for many years. The only specific authority given to Mr. Kuhfuss in this matter was contained in a resolution expressly authorizing him to present evidence sustaining the charges. Section 24—12 of the School Code provides:

"If so requested, a bill of particulars shall be delivered to the teacher, within 5 days after receipt of the request." Ill. Rev. Stat. 1973, ch. 122, par. 24—12.

We do not find any express statement in the statute cited above requiring the board to formally pass upon the precise content of the bill of particulars. Nor do we believe that the drafting of a bill of particulars involves the degree of judgment and discretion which requires formal action by the board. In specifying the facts supporting each of the charges, the bill of particulars only set out facts upon which the board's earlier decision was based. Any slight deficiency which existed in the procedure was cured by the board's later denial of plaintiff's motion

directed at questioning the authority of Mr. Kuhfuss to prepare and submit the bill of particulars.

■■ Plaintiff's claim that the bill of particulars does not relate to charge number four of the resolution of dismissal is likewise incorrect. The bill of particulars, in expanding on charge number four, stated: plaintiff had an excessive number of absences due to activities outside of school; despite repeated warnings the absences continued; plaintiff failed to provide certain required reports; and the attendance at a voluntary psychological clinic had decreased due to the increasing lack of student confidence in administrative personnel as a result of the informant incident. While this segment of the bill of particulars perhaps was not a model of clarity, it did apprise the plaintiff of the basis for the board's charges. The areas outlined were sufficiently well defined to enable the plaintiff to prepare his case. Therefore, in this regard the bill of particulars was adequate.

■■ Several points raised by plaintiff are all based on the uncontrovertable right of plaintiff to a fair hearing. (See *In re Murchison*, 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623, and *Gibson v. Berryhill*, 411 U.S. 564, 36 L. Ed. 2d 488, 93 S. Ct. 1689.) Plaintiff contends that the procedure required by section 24—12 of the School Code violates both the due process clause of the Fourteenth Amendment and article 1, section 2 of the Illinois Constitution. In addition, plaintiff alleges that bias on the part of a board member and the presentation of a report the night before the hearing, referring to evidence later introduced at the hearing, prejudiced the board and denied plaintiff a fair hearing. Plaintiff claims that vesting the multiple functions of investigation, prosecution, and factual determination in a single administrative agency does not qualify the board as an unbiased decision maker and the hearings before it therefore constituted a denial of due process. In *Withrow v. Larkin*, 421 U.S. 35, 58, 43 L. Ed. 2d 712, 729-30, 95 S. Ct. 1456, the United States Supreme Court rejected a similar contention and stated that "[t]he initial charge on determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they related to the same issues does not result in a procedural due process violation." A due process violation in such situation will be shown only when the facts demonstrate that the board's prehearing involvement foreclosed a fair consideration of the evidence presented at the hearing. (*Hortonville Joint School District No. 1 v. Hortonville Education Association*, ___ U.S. ___, 49 L. Ed. 2d 1, 96 S. Ct. 2308; *Withrow v. Larkin*, 421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456; *Fender v. School District No. 25*, 37 Ill. App. 3d 736, 347 N.E.2d 270.) *Withrow* and *Hortonville* adversely dispose of plaintiff's Federal constitutional objection to the dismissal procedure contained in the School Code. (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.) We believe a similar analysis should apply to the objections based on State

constitutional grounds and that the requirements of due process of our own constitution have been met.

■■ The alleged bias on the part of a board member that plaintiff claims denied him a fair hearing is based on a statement made by the board member to plaintiff's wife. According to Mrs. Morelli, board member Dennis Stoller told her that "he was sorry that he had to vote against Ray [plaintiff], but he had to vote against Ray because of teacher pressure." Since the effect of plaintiff's conduct on the morale and attitude of other teachers was in issue at the hearing, we do not believe that the remark evidences any improper mental state. The possible lack of cooperation that would occur between the plaintiff and the other staff members due to the hostilities caused by plaintiff's allegedly objectionable conduct was to be considered by the board. The record amply demonstrates the lack of cooperation between plaintiff and the other administrative personnel and plaintiff's superiors. Lack of cooperation can be the basis for the board's decision that the termination of a teacher's employment is in the best interest of the school. (*Robinson v. Community Unit School District No. 7*, 35 Ill. App. 2d 325, 182 N.E.2d 770; *Pearson v. Board of Education*, 12 Ill. App. 2d 44, 138 N.E.2d 326.) Since the statute in question is silent as to what constitutes cause, the question of what is in the best interest of the school is, in the first instance, in the tribunal having jurisdiction of the teachers. (*Jepsen v. Board of Education*, 19 Ill. App. 2d 204, 153 N.E.2d 417; accord, *Robinson v. Community Unit School District No. 7*, 35 Ill. App. 2d 325, 182 N.E.2d 770; *Pearson v. Board of Education*, 12 Ill. App. 2d 44, 138 N.E.2d 326.) A court of review will not interfere with the exercise of a power vested in a school board unless such exercise is arbitrary and capricious. (*Vance v. Board of Education*, 2 Ill. App. 3d 745, 277 N.E.2d 337.) Since the lack of cooperation which can be inferred from Mr. Stoller's statement forms a proper basis for dismissal, the statement does not demonstrate any bias on his part.

■■ The issue of a denial to a fair hearing because of a report presented to the board by a prospective witness on the night before the hearing was to begin and which contained facts to be testified to in evidence, poses a more significant constitutional question. Superintendent William Holman, a major witness at the hearing, presented a report to the school board the night before the start of the hearing. While the exact content of the report does not appear in the abstract, it is conceded that substantial portions of the report were devoted to the facts later testified to at the trial by Mr. Holman. Administrative officers or boards in proceedings before them, may not receive any evidence without notice to all parties. (*North Federal Savings & Loan Association v. Becker*, 24 Ill. 2d 514, 182 N.E.2d 155.) The United States Supreme Court has held that "[a]ll parties * * * must be given an opportunity to cross-examine

witnesses, to inspect documents and to offer evidence in explanation or rebuttal" of the evidence submitted. (*Interstate Commerce Com. v. Louisville & Nashville R.R. Co.*, 227 U.S. 88, 93, 57 L. Ed. 431, 434, 33 S. Ct. 185.) We view the "report" given as evidence under the rules set forth. The prehearing introduction of evidence without opportunity to cross-examine or rebut the evidence submitted was error. Initially, the board did have the investigative power to determine whether formal charges against the plaintiff were justified by the facts, a power which included hearing a report from the school's superintendent. However, once formal charges were issued, the board's investigative power no longer predominated and the focus of their responsibility shifted to that of decision maker. Once such a transition occurred at the issuance of the formal charges, the board was no longer free to hear evidence in the manner as was done here. It nevertheless must be determined whether the magnitude of this error was sufficient to deprive plaintiff of his right to a fair hearing. Since on his direct examination at the hearing, Mr. Holman repeated the same facts he had expressed in the previous nights' report, plaintiff had the opportunity to cross-examine Mr. Holman. Plaintiff availed himself of the opportunity and conducted a rigorous cross-examination. The ability to cross-examine is crucial in conducting a fair administrative hearing. While we neither approve nor condone of the board's actions, we do not believe the error in question was sufficient to deny plaintiff his right to a fair hearing.

■■ Plaintiff next alleges that because the evidence only refers to plaintiff's position as a principal and not as a teacher, the requirements of section 10—22.4 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 10—22.4) have not been met. The board was vested with the discretion to determine what the best interests of the school required. We believe the evidence presented was both competent and sufficient to sustain plaintiff's dismissal as a teacher as well as his dismissal as the principal.

■■ The remaining contention plaintiff urges as error was the admission of testimony concerning the results of polls taken of the faculty. Plaintiff contends that these polls were hearsay and therefore inadmissible. We assume without deciding that the strict rules of evidence apply in such an administrative hearing. But even under the rules of evidence the testimony was properly admitted under the state of mind exception. Cooperation among the faculty and administration is a paramount concern if a good educational environment is to be maintained. While the attitude of one teacher to another may not, in and of itself, be sufficient to dismiss a teacher, it is one of several factors to be considered by the school board in reaching its decision. As such, it is relevant to the scope of inquiry at the hearing. Therefore, any hearsay evidence which demonstrated the attitude of the various members of the faculty to the plaintiff was competent under the state of mind exception to the hearsay rule. (See *People v. Thomas*, 37

Ill. App. 3d 320, 346 N.E.2d 190.) Hence the poll was properly admitted into evidence by the hearing officer.

For the foregoing reasons the judgment of the circuit court of Tazewell County is affirmed.

Judgment affirmed.

STENGEL and BARRY, JJ., concur.