COMMONWEALTH *vs.* NEIL TRAINOR
(and companion cases [1]).

Suffolk. November 8, 1977. — April 14, 1978

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Obscenity,* Community standard, Expert testimony. *Due Process of Law,* Obscenity. *Constitutional Law,* Freedom of speech and of press, Obscenity. *Evidence,* Public opinion survey.

The statutory definition of obscene matter in G. L. c. 272, § 31, is not unconstitutionally vague. [798-799] KAPLAN, J., with whom LIACOS, J., joined, and ABRAMS, J., with whom LIACOS, J., joined, dissenting on the ground that the obscenity statute, G. L. c. 272, §§ 28C-31, violates art. 16 of the Massachusetts Declaration of Rights.

Expert testimony was not required as part of the prosecution's case at the trial of indictments under G. L. c. 272, § 29. [799-800]

Proof of knowledge necessary for a conviction under G. L. c. 272, § 29, does not require a showing that the defendant had knowledge of legal obscenity. [800-801]

At the trial of indictments under G. L. c. 272, § 29, there was no error in excluding from evidence a public opinion survey where the offer of proof failed to demonstrate the representativeness of the persons interviewed and failed to show that the survey results were relevant to any material issue in the case. [801-806]

---

[1] The other appellant is Beacon Distributors, Inc., doing business as New England News.

INDICTMENTS found and returned in the Superior Court on June 12, 1975.

The cases were heard by *Dwyer*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*William I. Cowin* (*Ronald H. Rappaport* with him) for the defendants.

*Timothy P. O'Neill*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The individual defendant and the corporate defendant were found guilty in February, 1976, after a jury waived trial, on all counts of indictments charging them with having possession of obscene matter in June, 1975, with intent to disseminate it. While these appeals were progressing to this court,[2] we decided three cases involving the obscenity statute which was enacted in June, 1974 (see St. 1974, c. 430), after this court's holding in *Commonwealth* v. *Horton*, 365 Mass. 164 (1974), that our previous obscenity statute was unconstitutional. See *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374 (1976); *Commonwealth* v. *Thureson*, 371 Mass. 387 (1976); *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.*, 371 Mass. 391 (1976). The appellants ask us to reconsider certain of our holdings in those cases, and they challenge the judge's exclusion of a public opinion survey from evidence. We affirm the judgments.[3]

---

[2] We granted the defendants' application for direct appellate review.

[3] The appellants do not argue here, and explicitly waived at trial, any claim that these criminal proceedings must be dismissed because in rem proceedings were not commenced first under G. L. c. 272, §§ 28C, 28D, 28E, 28G, 28H. On the defendants' insistence, such proceedings could have been required as to the publications involved here if they were "books." The statute does not apply by its terms to films. Although the contrary has been suggested (see Liacos, J., concurring in *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 378 [1977]), the absence of a showing of the commencement of a previous civil proceeding is not a jurisdictional defect. It is a matter which may be raised by the defendant, but need not be considered otherwise. *Commonwealth* v. *Ferro*, 372 Mass. 379, 384-386 (1977).

1. In *Commonwealth* v. *707 Main Corp., supra* at 383-384, we held that G. L. c. 272, §§ 28C-31, were not unconstitutionally vague under either the Constitution of the United States or the Constitution of the Commonwealth. The appellants grant that the material which they possessed for sale portrayed sexual conduct as defined in G. L. c. 272, § 31, and concede that the definition of sexual conduct is not vague. They argue, however, that the statutory definition of obscene matter is unconstitutionally vague because of that language in G. L. c. 272, § 31, as appearing in St. 1974, c. 430, § 12, which requires that the matter, taken as a whole, must appeal "to prurient interest of the average person, applying the contemporary standards of the commonwealth" and must depict or describe "sexual conduct in a patently offensive way . . . ." In *Commonwealth* v. *707 Main Corp., supra* at 384, we noted that the statutory definition met the requirements expressed by a majority of the Supreme Court of the United States in *Miller* v. *California,* 413 U.S. 15, 24-27 (1973). We concluded that, in the typical case, the trier of fact must use an average citizen of Massachusetts as the standard for determining whether particular matter appeals to the prurient interest of the average person and for determining whether the matter depicts or describes sexual conduct in a patently offensive way. 371 Mass. at 384.

The appellants argue that the statutory standard of a hypothetical average person is vague and difficult to apply. They contend, without any proof on the record, that there is no Statewide standard concerning obscenity and argue that, even if there were such a standard, a distributor of sexually oriented material must identify that standard at his peril. The Supreme Court of the United States has concluded that language substantially equivalent to our statutory definition of "obscene" is not unconstitutionally vague. See *Ward* v. *Illinois,* 431 U.S. 767, 771-773 (1977); *Smith* v. *United States,* 431 U.S. 291, 308-309 (1977), and cases cited. The only question before us is whether the Constitution of the Commonwealth should be construed to require

greater specificity. We rejected any such claim in *Commonwealth* v. *707 Main Corp., supra,* and see no reason to change that conclusion at this time. If material displays "sexual conduct" as precisely defined by § 31, the person is adequately warned that the material may also fall within the other statutory elements of obscenity. There are numerous situations in the criminal law where conduct which fails to meet the standard of reasonableness is criminal. The trier of fact in such an instance must assess the defendant's conduct in terms of the way in which a reasonable person should have acted. The use of a standard of reasonableness has never been held unconstitutionally vague under our Constitution, and the statutory standard in this case has not been shown to be significantly different in its concept from a measure of reasonableness. See *Smith* v. *United States, supra* at 308; *Hamling* v. *United States,* 418 U.S. 87, 104-105 (1974). Granting that the standard is incapable of precise articulation, we do not consider the definition of "obscene" unconstitutionally vague as applied to the appellants.

2. The appellants next urge us to reconsider our holdings that, without the introduction of expert evidence on Commonwealth norms, the material itself may be sufficient evidence for the trier of fact to find obscenity. *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.,* 371 Mass. 391, 393-394 (1976). *Commonwealth* v. *Thureson,* 371 Mass. 387, 389 (1976). *Commonwealth* v. *707 Main Corp.,* 371 Mass. 374, 384-385 (1976). See *Jenkins* v. *Georgia,* 418 U.S. 153, 159-160 (1974); *Hamling* v. *United States,* 418 U.S. 87, 104 (1974); *Kaplan* v. *California,* 413 U.S. 115, 121 (1973); *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 56 (1973). We see no reason to change our view on the subject.

The appellants concede that the weight of authority supports the conclusion that expert testimony is not required as part of the prosecution's proof in the typical obscenity case.[4]

---

[4] We recognize that expert testimony may be necessary where the appeal is to a deviant group. See *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 56 n.6 (1973).

Of course, absent favorable expert testimony, the Commonwealth risks that the trier of fact will be unable to arrive at a conclusion concerning Statewide standards. A defendant is entitled to rulings or instructions that, if the trier of fact cannot determine Commonwealth norms, the defendant is entitled to a finding in his favor, and that the trier of fact must apply, not personal views, but the views of an average person in the Commonwealth as a whole. Although the defendant may offer his own evidence concerning Statewide standards (*Commonwealth* v. *707 Main Corp., supra* at 384), the burden of proving a violation of those standards beyond a reasonable doubt remains on the Commonwealth.

We leave to another occasion, if it should ever arise, resolution of any challenge to the statute by proof that there is no such thing as (1) a "prurient interest of the average person," (2) sexual conduct which is patently offensive with reference to contemporary Commonwealth norms, or (3) "contemporary standards of the commonwealth." The appellants have not met their heavy burden of demonstrating the unconstitutionality of the Commonwealth's obscenity statutes. We are not persuaded that there is no rational basis for the Legislature to conclude that there are ascertainable Statewide standards, even though the citizens of the Commonwealth differ from each other in numerous ways, including upbringing, place of residence, age, education, religion, and sex. The existence of Statewide standards lies at the heart of the Commonwealth's obscenity statute because such universal standards must exist if a jury selected from only one county is to apply them. Of course, if such standards do not exist, the statute must fail for unconstitutional vagueness.

3. We see no occasion to change our views, expressed in *Commonwealth* v. *707 Main Corp., supra* at 382, concerning the nature of the proof of a defendant's knowledge necessary for a conviction under G. L. c. 272, § 29. Section 29 requires proof that the defendant possessed matter which was obscene, "knowing it to be obscene." Section 31 of

G. L. c. 272, as appearing in St. 1974, c. 430, § 12, defines "knowing" as "a general awareness of the character of the matter." In our opinion in *Commonwealth* v. *707 Main Corp.*, *supra* at 383, we said that "knowledge of legal obscenity is not required," and noted that the statute comported with "the constitutional requirement that a defendant have knowledge of the matter's contents and general character before a criminal conviction . . . may be obtained." *Id.*, citing *Hamling* v. *United States*, 418 U.S. 87, 123 (1974). *Commonwealth* v. *Thureson*, 371 Mass. 387, 389-390 (1976). In adhering to this position, we discern no violation of a defendant's right to due process under the Declaration of Rights.

4. We come finally to an issue with which this court has not dealt previously. The appellants argue that the judge improperly excluded a public opinion survey from evidence. Although, as will be seen, public opinion surveys are admissible in certain circumstances, we agree with the judge's decision to exclude the appellants' public opinion survey.

A properly conducted public opinion survey, offered through an expert in conducting such surveys, is admissible in an obscenity case if it tends to show relevant standards in the Commonwealth. We see no meaningful distinction between a properly conducted public opinion survey offered to show community norms and the testimony of an expert who states his views on the opinion of the public concerning the portrayal of certain allegedly obscene conduct. We have already recognized the admissibility of expert testimony of the latter type. We have said, citing *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49, 56 (1973), that triers of fact "may consider expert testimony on the subject of Statewide standards, if any is offered in evidence, but also may disregard such evidence because the matter at issue may be per se sufficient evidence for a finding of prurience in most cases." *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 384-385 (1976). Although expert testimony may be excluded, in the judge's discretion, if a subject is within the common knowledge of the average juror, the line between matters of com-

mon knowledge and matters beyond common knowledge often is not precise. If such expert testimony may give the jury appreciable assistance in resolving a fact question, it is admissible in the judge's discretion. *Commonwealth* v. *Fournier,* 372 Mass. 346, 350 (1977). *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975). Where the question is whether portrayals of sexual conduct are "obscene" under the statutory definition, it would be a rare case in which testimony from a qualified expert should be excluded on the ground that it would not be helpful to the trier of fact. Similarly, a properly conducted public opinion survey should be admitted. The question then is what is a properly conducted public opinion survey.

If the universe surveyed is relevant, if the sample questioned is representative of the relevant universe, if the questions are in a form appropriate to obtain unbiased answers within a reasonable margin of error, and if the pollster is qualified, the weight of authority supports the admission of a public opinion survey tending to prove a fact relevant to a material issue. See the leading, oft-cited case, *Zippo Mfg. Co.* v. *Rogers Imports, Inc.,* 216 F. Supp. 670, 682 et seq. (S.D.N.Y. 1963). See also *Randy's Studebaker Sales, Inc.* v. *Nissan Motor Corp. in U.S.A.,* 533 F.2d 510, 520 (10th Cir. 1976); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf.* v. *Steinway & Sons,* 523 F.2d 1331, 1341 (2d Cir. 1975); *President of Colby College* v. *Colby College-N.H.,* 508 F.2d 804, 809 (1st Cir. 1975); *Holiday Inns, Inc.* v. *Holiday Out in America,* 481 F.2d 445, 447 (5th Cir. 1973); *Sample, Inc.* v. *Porrath,* 41 App. Div. 2d 118, 123 (1973), aff'd on this opinion, 33 N.Y.2d 961 (1974); 6 J. Wigmore, Evidence § 1704 n.1 (Chadbourn rev. 1976); 2 S. Gard, Jones on Evidence, Civil and Criminal § 10:8, at 278-279 (6th ed. 1972); Annot., 76 A.L.R.2d 619 (1961); Manual for Complex Litigation, 104-106 (West Pub. Co. 1977), discussing the admissibility of the results of polls; Zeisel, The Uniqueness of Survey Evidence, 45 Cornell L.Q. 322 (1960); Sorensen and Sorensen, The Admissibility and Use of Opinion Research Evidence, 28 N.Y.U.L. Rev. 1213 (1953). However, where

the methodology of the survey is deficient, the trial judge should exclude it. See, e.g., *Bank of Utah* v. *Commercial Security Bank,* 369 F.2d 19, 27 (10th Cir. 1966), cert. denied, 386 U.S. 1018 (1967) (unrepresentative sample used); *People* v. *Thomas,* 37 Ill. App. 3d 320, 325-326 (1976) (inadequate foundation for survey in obscenity case); *Regina* v. *Times Square Cinema Ltd.,* 4 C.C.C.2d 229 (Ont. Ct. of App. 1971) (improper universe).

We are not inclined to pause long to resolve whether a survey of people's opinions is hearsay and, if it is, whether it is admissible under the state of mind exception to the hearsay rule. Numerous authorities have admitted particular surveys under that hearsay exception. See *Zippo Mfg. Co.* v. *Rogers Imports, Inc., supra* at 683; *Holiday Inns, Inc.* v. *Holiday Out in America, supra* at 447; *Morelli* v. *Board of Educ., Pekin Community High School Dist. No. 303,* 42 Ill. App. 3d 722, 730-731 (1976); 2 S. Gard, Jones on Evidence, Civil and Criminal *supra,* § 10:8 at 278-279; *Regina* v. *Prairie Schooner News Ltd.,* 1 C.C.C.2d 251, 266 (Man. Ct. of App. 1970).[5] The focus should be on the techniques employed rather than on whether hearsay is involved. See Fed. R. Evid. 703 and Note of the Advisory Committee, 56 F.R.D. 183, 283 (1972). A properly conducted public opinion survey itself adequately ensures a good measure of trustworthiness, and its admission may be necessary in the sense that no other evidence would be as good as the survey evidence or perhaps even obtainable as a practical matter. See *Zippo Mfg. Co.* v. *Rogers Imports, Inc., supra* at 683-684; *American Luggage Works, Inc.* v. *United States Trunk Co.,* 158 F. Supp. 50, 53 (D. Mass. 1957). Of course, the judge will have to determine in his discretion whether

---

[5] In Canada, where the definition of obscenity is founded on "the undue exploitation of sex," the courts have considered the admissibility of survey evidence. Lamont, Public Opinion Polls and Survey Evidence In Obscenity Cases, 15 Crim. L.Q. 135 (1972). The author of this article notes that "community standards" are considered in such cases and that "[c]riminal obscenity is an area of the law which is peculiarly suited to the use of survey evidence because of its very definition." *Id.* at 136.

the methodology of the survey was adequate to justify its admission.[6] In certain instances, any weaknesses in the manner in which a poll was conducted might affect only the weight to be accorded the survey results rather than the admissibility of the survey in evidence.

In light of these principles, we consider the public opinion survey prepared for the defendants in this case. The defendants made an offer of proof of the testimony and exhibits relating to their survey. Two hundred adults, all residents of Boston, divided evenly by sex, were obtained from all sections of Boston by telephone solicitations conducted evenings, and each was interviewed. Each was offered $10 to come to an office in downtown Boston for an interview on an undisclosed subject relating to a pending court case. Trained personnel conducted the interviews shortly before trial. The defendants intended to introduce the results of the survey through an expert experienced in conducting public opinion surveys, who would have testified that the margin of error in the survey ranged from 6% to 10%.

The questions largely sought the personal views of each person interviewed: whether, in particular circumstances, he or she would be willing to have motion picture films shown or magazines sold depicting human sexual conduct. One question asked, for example, whether the individual would "personally be willing to have motion picture films or magazines showing human sexual intercourse between members of the opposite sex (sic) shown or sold" in (a) residential neighborhoods of Boston, (b) general commercial or business areas in Boston, (c) Boston adult entertainment districts, (d) under conditions where minors were excluded, or (e) in places clearly marked so that anyone not wanting to see them could avoid them. The interviewer sug-

---

[6] In *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 215 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972), we held that the judge did not abuse his discretion in excluding tables based on interviews with persons not before the court.

gested three answers: would be willing, would not be willing, or "[d]on't care one way or the other." If other answers, such as no opinion or a qualified approval, were given, those answers also were tabulated. Similar questions were asked concerning each subject's willingness to allow the sale or showing of films or magazines depicting human masturbation, oral sex, or homosexual acts. Two other questions inquired into each subject's willingness to allow the sale of particular magazines which were shown to him or her. One of those magazines was the subject of one count in an indictment in this case.

As would be expected, the willingness of the subjects interviewed to have such films shown, or magazines sold, increased as the suggested place of the showing or sale moved from residential to adult entertainment areas, when minors were excluded from involvement, and when the nature of the material to be shown or sold was plainly indicated. In general, males were more willing to allow the showing or sale of such materials than females.

It is important to note certain facts not set forth in the offer of proof. There was no indication that the method of selection of the subjects to be interviewed assured a representative sample of the citizens of Boston. One might suspect that certain persons would decline to participate because of the method by which they were approached or because of their unwillingness or inability to take the time to participate in such interviews. The selection process was not shown to be free from producing a bias in the survey results.

The interrogation of residents of only Boston raises the question whether the survey results are competent to prove the standards of the Commonwealth as a whole. However, because the obscenity statute assumes the existence of a uniform, Statewide standard, we should not reject a representative and otherwise valid survey limited to a population as large as that of Boston.

Finally, and most significantly, we note the absence of any indication that the willingness, the lack of willingness, or the indifference of a group to the sale of sexually explicit

magazines or the showing of sexually explicit films has any relevance to any issue material to this case. The survey results apparently were offered as bearing on the question whether the films and magazines involved in this case displayed sexual conduct in a patently offensive way. The offer of proof made no attempt to connect an acceptance of, or an indifference to, the showing or sale of that material with whether the particular sexual conduct involved in this case was depicted or described in a patently offensive way. Perhaps many people would not object to others' seeing such material, although they themselves regard that material as patently offensive. The offer of proof did not explain the relationship of the offered evidence to this fundamental factual question of patent offensiveness.

Because the offer of proof failed to demonstrate the representativeness of the persons interviewed and failed to show that the survey results were relevant to any material issue in the case, the judge was warranted in excluding the survey and expert testimony concerning it.

*Judgments affirmed.*

KAPLAN, J. (with whom Liacos, J., joins, dissenting). As opportunity offered, I have expressed my belief that the statute is unconstitutional under our Declaration of Rights.[1] On the same ground of fundamental invalidity I vote today to reverse the judgments of conviction.

---

[1] *Commonwealth* v. *Horton,* 365 Mass. 164, 177 (1974) (concurring); *Commonwealth* v. *Capri Enterprises, Inc.,* 365 Mass. 179, 181 (1974) (concurring); *Essex Theatre Corp.* v. *Police Comm'r of Boston,* 365 Mass. 183, 185 (1974) (concurring); *Revere* v. *Aucella,* 369 Mass. 138, 148 (1975) (dissenting in part), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett,* 429 U.S. 877 (1976); *Commonwealth* v. *707 Main Corp.,* 371 Mass. 374, 386 (1976) (dissenting); *Commonwealth* v. *Thureson,* 371 Mass. 387, 391 (1976) (concurring); *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.,* 371 Mass. 391, 395 (1976) (dissenting); *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 373 (1977) (concurring); *Commonwealth* v. *Ferro,* 372 Mass. 379, 386-387 (1977) (dissenting); *Commonwealth* v. *Sees, ante* 532, 538 (1978) (concurring).

A majority of the court balk at holding the law to be un-
constitutional on its face, but they say they are open to a
demonstration that there are no cognizable Statewide "stand-
ards," in which case they would hold the law to be void for
vagueness. As we are dealing with censorship, it would
seem that, if any demand for a demonstration can be fairly
made, it should be in the contrary sense, and addressed to
the Commonwealth, not the putative transgressor. Because
of the difficulty of the subject matter, and the inevitable
opacity of the questions that would have to be asked on a
poll or survey, the placing of the burden is not unimportant.
Nevertheless it would be premature to discourage by fore-
casts of failure any attempts to satisfy the majority with em-
pirical data. Indeed, so wearisome and purposeless have
been the prosecutions under the law as seen here, that all
might hope for a reason to put the statute to rest and out of
the way.

ABRAMS, J. (with whom Liacos, J., joins, dissenting). I
agree that our obscenity statute, G. L. c. 272, §§ 28C-31,
meets the requirements set forth in *Miller* v. *California*, 413
U.S. 15, 24-27 (1973). *Commonwealth* v. *707 Main Corp.*,
371 Mass. 374, 381-386 (1976). See *Ward* v. *Illinois*, 431
U.S. 767, 771-776 (1977); *Smith* v. *United States*, 431 U.S.
291, 308-309 (1977). In the past we have stated that the fact
that we rested a decision wholly on the Federal Constitution
as construed by the United States Supreme Court should not
give rise to any inference "that the Declaration of Rights of
the Constitution of this Commonwealth is less capable of
protecting the essentials of freedom of speech, of the press,
and of assembly than is the Federal Constitution. See arts.
16 and 19." *Commonwealth* v. *Gilfedder*, 321 Mass. 335,
343 (1947). When a decision rests on controlling decisions of
the Supreme Court of the United States, "we forbear aca-
demic discussion of the Declaration of Rights of our own
Constitution." *Brattle Films, Inc.* v. *Commissioner of Pub.
Safety*, 333 Mass. 58, 61 (1955). Recently we have de-
termined that in some circumstances art. 16 protects expres-

sion which might not be entitled to protection as a matter of Federal constitutional law. *Commonwealth* v. *Sees, ante* 532, 536-537 (1978).

While a majority of this court have held that under art. 16 our obscenity statute is constitutional, *Commonwealth* v. *707 Main Corp., supra* at 381, I would hold that under art. 16 obscenity is speech subject to reasonable restrictions protecting unwilling viewers,[1] captive audiences,[2] minors,[3] and possibly the neighborhood.[4] *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 373-374 (1977) (Liacos, J., concurring). *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 103-113 (1973) (Brennan, J., dissenting). T. Emerson, The System of Freedom of Expression 495-503 (Vintage Books, 1970). Report of the Commission on Obscenity and Pornography 51-62 (1971).[5] Emerson, Toward a General Theory of the First Amendment, 72 Yale L.J. 877, 937-939 (1963). Richards, Free Speech and Obscenity Law: Toward a Moral Theory of the First Amendment, 123 U. Pa. L. Rev.

---

[1] See *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 105-107 (1973) (Brennan, J., dissenting); *Redrup* v. *New York,* 386 U.S. 767, 769 (1967); *Revere* v. *Aucella,* 369 Mass. 138, 142-143 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett,* 429 U.S. 877 (1976). Cf. *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 208-212 (1975).

[2] See, e.g., *Lehman* v. *Shaker Heights,* 418 U.S. 298, 304 (1974).

[3] See, e.g., *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 105-107 (1973) (Brennan, J., dissenting); *Ginsberg* v. *New York,* 390 U.S. 629 (1968); *Jacobellis* v. *Ohio,* 378 U.S. 184, 195 (1964). See also *Kaplan* v. *California,* 413 U.S. 115, 120 (1973). Cf. *Butler* v. *Michigan,* 352 U.S. 380 (1957). I do not consider distribution to minors in detail since it is not involved in this case. See G. L. c. 272, § 28; St. 1977, c. 917.

[4] See, e.g., *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 71-72 (1976); *Grayned* v. *Rockford,* 408 U.S. 104 (1972). Cf. *Framingham Clinic, Inc.* v. *Selectmen of Southborough,* 373 Mass. 279, 287 n.13 (1977).

[5] The Report of the Commission on Obscenity and Pornography recommended the repeal of laws forbidding dissemination of explicit sexual material to consenting adults (*id.* at 51-56), the adoption of "public display" laws designed to protect unwilling viewers from offensive depictions of sexual activity (*id.* at 60-62, 67), and the adoption of laws prohibiting dissemination of pornography to minors (*id.* at 56-60, 66-67).

45, 83-84 (1974). See *Stanley* v. *Georgia,* 394 U.S. 557, 567 (1969); *Redrup* v. *New York,* 386 U.S. 767, 769 (1967); Comment, In Quest of a "Decent Society": Obscenity and the Burger Court, 49 Wash. L. Rev. 89, 118-123 (1973).[6]

The right to express and receive ideas is fundamental to our society. See *Stanley* v. *Georgia, supra* at 564. When no public behavioral consequences are involved, as is the case when consenting adults view or read material, art. 16 guarantees the unfettered exercise of this right. See Emerson, 72 Yale L.J. at 938; Richards, 123 U. Pa. L. Rev. at 82-90; Comment, 49 Wash. L. Rev. at 118-123. This guaranty of freedom of speech is not confined to the expression of views which are not offensive to the majority. Freedom of speech is "not free thought for those who agree with us but *freedom for the thought that we hate"* (emphasis added), *United States* v. *Schwimmer,* 279 U.S. 644, 655 (1929) (Holmes, J., dissenting), overruled in *Girouard* v. *United States,* 328 U.S. 61 (1946). Obscene material may express ideas and opinions. See Richards, 123 U. Pa. L. Rev. at 79-82. Therefore, however distasteful these ideas are to some, art. 16 prohibits restriction of access to them by consenting adults.

However, the special nature of obscene materials and the effect they have on unwilling recipients justify the State's assertion of an interest in protecting such recipients. It is a presently accepted premise that exposure of erotic material to "a person contrary to his wishes has all the characteristics of a physical assault. The harm is direct, immediate, and not controllable by regulating subsequent action. Such communications can therefore realistically be classified as action. Moreover, from a slightly different point of view, forcing obscenity upon another person constitutes an invasion of his privacy, and for that reason also falls outside the system

---

[6] Six States — Iowa, Montana, New Mexico, South Dakota, Vermont, and West Virginia — have enacted obscenity statutes which only prohibit distribution to minors. See Lockhart, Escape From the Chill of Uncertainty: Explicit Sex and The First Amendment, 9 Ga. L. Rev. 533, 535 nn.12, 13 (1975).

of freedom of expression." T. Emerson, The System of
Freedom of Expression 496 (Vintage Books, 1971). Allowing
State regulation of obscene material only when such
material constitutes an intrusion on an unwilling public or
on minors would recognize the rights of consenting adults to
receive uncensored ideas and opinions and would respect
the rights of others to be free from the equivalent of a harm-
ful physical assault.

Moreover, such an approach to the obscenity statute
would serve many beneficial purposes.[7] This court has rec-
ognized that any formulation of an obscenity standard re-
quires that we be ever vigilant that the fine line between
obscenity and protected expression is not transgressed. See
*Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 380
(1976). Judges are not trained for such a task, and they ap-
parently are not able to apply accurately the standards
which have been developed. "In a long series of cases the
Supreme Court has invariably, with two inexplicable ex-
ceptions, reversed all judgments based on findings of ob-
scenity in cases which apparently involved all types of al-
leged pornography. The phrase 'hard-core pornography,'
. . . is little more than a cliche which has not been defined
in any case, nor has it apparently been a premise for the af-
firmation of even one judgment of guilt" (footnotes
omitted). *Commonwealth* v. *Horton*, 365 Mass. 164,
175-176 (1974) (Hennessey, J., concurring). The current test
which is enunciated in *Miller* v. *California*, 413 U.S. 15
(1973), appears to offer no easy solution to this problem.
See, e.g., *Jenkins* v. *Georgia*, 418 U.S. 153 (1974) (no jury
could correctly find the film "Carnal Knowledge" obscene).

Of course, I do not think that this approach will avoid all
the problems inherent in the area of obscenity. By focusing
on intrusions on an unwilling public or minors, however,

---

[7] Not the least of such benefits is that such an approach would serve "as
an anchor to windward and as a guard against surprise in case of some
future shift in the rulings of the Supreme Court of the United States."
*Commonwealth* v. *Monosson*, 351 Mass. 327, 330 (1966) (search warrant
affidavit).

some of the uncertainty now pervading obscenity litigation could be eliminated. Courts, which are accustomed to deciding issues in light of factual circumstances, would be better able to adjudicate disputes which turn on the existence of such an intrusion than to serve in the role of censors or arbiters of taste. See *Commonwealth* v. *Horton, supra* at 178 (Kaplan, J., concurring).

Such an approach also takes "notice of abundant empirical evidence that the community has tolerated increasingly permissive displays of pornographic literature and X-rated movies." *Commonwealth* v. *Horton, supra* at 176 (Hennessey, J., concurring). Rather than embark on another "seventeen years [of] confusion . . . as to the validity and effectiveness of obscenity statutes," *id.* at 174 (Hennessey, J., concurring), I would direct courts' efforts and those of police and prosecutors to those instances in which there is an assault on the public, rather than to the nearly impossible task of enforcing laws against the dissemination of obscene material to consenting adults.[8] See Grant & Angoff, Massachusetts and Censorship, 10 B.U.L. Rev. 36 (1930).

Since there is no evidence of a thrust on an unwilling public, a captive audience, or a neighborhood, or any involvement of minors, I would reverse the convictions.

---

[8] See *Commonwealth* v. *Balthazar,* 366 Mass. 298, 302 (1974); *Commonwealth* v. *Scagliotti,* 373 Mass. 626, 628-629 (1977); *Commonwealth* v. *King, ante* 5, 14 (1977). See also *Commonwealth* v. *Reilly,* 5 Mass. App. Ct. 435, 437 (1977). The primary inference to be drawn from the variety of circumstances presented by these cases is that there are limits on the ability of the Commonwealth to intrude into the private behavior of consenting adults in the area of sexual conduct. This limitation occurring as it does in the context of some of the most personal of life's choices may well apply to obscenity viewed or read by consenting adults.